(64 App. Div. 562.)

## LAWRENCE v. WILSON.

(Supreme Court, Appellate Division, Second Department. October 24, 1901.)

**1. CONVERSION—QUESTION FOR JURY.**

   In an action for conversion of personal property, where the complaint alleged that the conversion was of a certain date after assignment to plaintiff of the owner's rights in such property, and there was a conflict of testimony as to whether defendant took the property in question before such date and before the assignment, it was error to take from the jury the question as to the date of the conversion.

**2. SAME—RIGHT OF RECOVERY—DEMAND.**

   In an action for conversion of property which had been assigned to plaintiff, a recovery may be had though the property was taken from plaintiff's assignor prior to the assignment, where plaintiff had demanded and was refused the property subsequent to its assignment to him.

**3. SAME—QUESTION FOR JURY.**

   If the property was converted before its assignment to plaintiff, it is for the jury to say what property, if any, remained in defendant's possession at the time of the demand upon him by the plaintiff.

Appeal from trial term, Westchester county.

Action by James V. Lawrence, sole surviving partner of the firm of Lawrence Bros., against William C. G. Wilson. From a judgment dismissing the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Hector M. Hitchins, for appellant.

Eugene Frayer, for respondent.

SEWELL, J. This action was brought to recover damages for taking and converting personal property. The complaint alleged that on the 9th day of January, 1900, Richard B. Riker was the owner of and was entitled to the possession of the property; that on the 9th day of January, 1900, the said Richard B. Riker, for a good and valuable consideration, sold, assigned, and transferred to the plaintiff, James V. Lawrence, all his right, title, and interest therein; and that ever since said date the said James V. Lawrence has been the owner and entitled to the possession of said property; that on or about the 5th day of February, 1900, the said defendant unlawfully and wrongfully took and carried away the said goods, and converted them to his own use, to plaintiff's damage in the sum of $1,000. The complaint was dismissed upon the ground that the action was brought for a wrongful taking and conversion of the property subsequent to the assignment (a cause of action accruing to the plaintiff directly), and the evidence showed that the wrongful taking occurred previous to the assignment (a cause of action in favor of his assignor). If the plaintiff was restricted to a cause of action occurring after the 9th day of January, when the assignment was made, there was a question of fact which might have been determined for the plaintiff, and which, if determined in his favor, would have entitled him to recover. A review of the evidence shows that there was a conflict of testimony as to when the defendant took the property in question,

which consisted of about 3,000 feet of North Carolina piné boards, out of which Riker had built a workshop or shanty, and of lumber and other property stored therein.

Mr. Walling, a witness for the plaintiff, testified:

"In January of 1900, Mr. Riker was indebted to Mr. Lawrence for material. Some of that material was in that very shop at that time. * * * I can't remember the date when I last saw that house, but the last time that I saw it it was full of material. That was before the foreclosure sale that took place on the 6th of February. I don't know how long before. I think five or six days before."

Cecil Lawrence also testified:

"I subsequently saw that property just before the assignment on the 9th of January. I did go inside of it. In that property at that time there was North Carolina pine,—two by four studding; tools of various description. There were ten to twelve kegs of nails, roll of tar paper, paints of various kinds, pick, shovel, half a barrel of oil, and various other articles, a lot of patent stain, and about 1,000 feet of whitewood. I made a list of that. * .* * I first went to the building after the 9th of January. On or about the 10th of March, Mr. Wilson, the defendant, came to our office, and I took Mr. Wilson to the building at Yonkers Park. I found there at the building Mr. Banker. This building and this material was not there at that time. * * * When I made my list of the material which I say was in that building I couldn't tell you the exact date. I think it was some time in the month of January. I made that list while I was over in the park, in the shanty.° I think it was in, January I made the list on a piece of paper."

It is true that one of the plaintiff's witnesses and several of the defendant's testified that the shop or shanty was torn down, and the material and other property were taken by the defendant in December before the assignment; but there was not such a preponderance of evidence in favor of the defendant as to justify the court in taking this question from the jury. In a case which of right is triable by jury the court cannot take from that tribunal the ultimate decision of the fact, unless the fact is either uncontradicted or the contradiction is illusory, or where, to use a current word, the answering evidence is a "scintilla" merely. Bagley v. Bowe, 105 N. Y. 171, 11 N. E. 386, 59 Am. Rep. 488. The plaintiff having taken the position upon the trial that the cause of action alleged was for a conversion subsequent to the assignment, he cannot now claim that the court should have disregarded the variance as to the time when the defendant took the property, and permit him to recover as the owner of the cause of action for the previous wrongful taking. But, apart from the question whether the assignment of the property carried with it the right of action for conversion, and the question whether there was a fatal variance between the pleadings and proof, it is quite obvious that, even if the defendant wrongfully took the property in November, or any time before the assignment, it did not change the title. It still belongs to Riker, and his sale of it conveyed the property to the plaintiff. Every fresh interference with the property was a new wrong. The previous wrong on the defendant's part was no excuse for his failure to surrender the property to the plaintiff when demanded.

Conversion is alleged as a fact in the case, and under that allegation evidence of it was introduced without objection on the part of

the defendant. The defendant concedes that before the beginning of the action, and on or about the 5th day of February, he received a demand in writing; and the plaintiff's attorney testified that he demanded the property on the 21st day of February, and that the defendant said in reply that he had ordered the shanty torn down, and whatever materials there were there placed in the cellar of his house. "I asked him to give us possession of these materials. He said, 'No, I consider that they belong to me under my mortgage, and I will not give possession of them.'" The evidence as to the particular property in the possession of the defendant at the time of the several demands is extremely meager. Proof was, however, given upon the trial which tended to show that some of the property taken by the defendant was then in his possession, and, meager as the evidence is, it was for the jury to say what property, if any, then remained in his possession, if they find as a fact that the property was taken by him prior to the assignment to the plaintiff.

We are therefore of the opinion that the learned trial judge erred in dismissing the complaint; that the judgment and order 'must be reversed, and a new trial granted; costs to abide the event. All concur.