(107 App. Div. 365.)

### LAWRENCE v. WILSON.

(Supreme Court, Appellate Division, Second Department. August 31, 1905.)

1. CONVERSION—EXCESSIVE DAMAGES.
   Evidence in an action for the conversion of lumber examined, and *held* to show that the verdict is excessive, necessitating a new trial, unless plaintiff will accept a verdict for a specified sum.

2. APPEAL—REVIEW—WEIGHT OF EVIDENCE.
   It is the duty of appellate courts to set aside a verdict against the weight of the evidence, though it is a second one in favor of the same party.

Appeal from Trial Term, Westchester County.

Action by James V. Lawrence against William C. Wilson. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Modified.

See 83 N. Y. Supp. 821.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Eugene Frayer, for appellant.
Hector M. Hitchings, for respondent.

RICH, J. This action was brought to recover damages for the alleged taking and conversion of personal property of the value of $1,000 owned by the plaintiff. It has been tried three times. On the first trial the complaint was dismissed by the trial justice, and judgment entered accordingly, which was reversed on appeal by this court, on the ground that questions of fact were involved which should have been submitted to the jury. Lawrence v. Wilson, 64 App. Div. 562, 72 N. Y. Supp. 289. Upon the second trial the plaintiff recovered a verdict for $400, which the trial court ordered set aside as excessive, unless plaintiff stipulated to reduce the recovery to $75. Upon the last trial the jury rendered a verdict in favor of the plaintiff for $1,134. Defendant's motion to set the verdict aside, and for an order granting a new trial on the exceptions and on the ground that the verdict was for excessive damages, contrary to law, and against the weight of evidence, was denied. From the judgment entered, and from the order denying such motion, this appeal is taken.

The contention of the plaintiff was that on January 9, 1900, one Richard Riker, being on that day the owner and entitled to the possession of certain lumber and other materials, sold and assigned "all his right, title, and interest" therein to the plaintiff, who since that date has been the owner and entitled to the possession thereof; that on February 5, 1900, "the defendant unlawfully and wrongfully took and carried away said goods and converted them to his own use." The lumber and other materials were those used in the construction of a temporary shop or shanty, so called, by Riker, for the use of himself and his workmen while engaged in building three houses upon adjacent land, upon which the defendant had a mortgage in process of foreclosure, and stored therein by Riker when he abandoned work upon said buildings at some time prior to November 15, 1899. The alleged wrongful and unlawful taking consisted in tearing down the shanty and taking away the lumber of which it had been constructed, together with the materials stored therein by the defendant.

There is no contradiction of the facts: First. That Riker was the owner of the lumber of which the shanty was constructed and of the materials stored in it, at the time he abandoned work upon the three houses in the fall of 1899. Second. That the defendant directed an employé to tear down the shanty and use the boards of which it was constructed in covering the openings for the doors and windows of the unfinished houses, and the materials in it were

removed to the unfinished corner house of the defendant. Third. That afterward Riker took this material into his possession and delivered it to Hall, to be applied upon an indebtedness to him, and it was subsequently sold to the defendant by Hall for use on the unfinished buildings for which it had been originally prepared. Fourth. That on January 9, 1900, Riker executed and delivered to the plaintiff a bill of sale of all the materials that he claimed had been used in the construction of the shanty and stored therein, stating its value to be $1,000, and on the same day addressed a letter to the plaintiff, inclosing an inventory of such materials, all of which materials, he wrote, "I have this day assigned to you, and hereby request that you will collect the value thereof from whatever party or parties have taken and converted the same. The said shop has been torn down and used in the inclosure of the three houses in question without my authority or consent, and the material which was stored in said shop has also been removed therefrom and either placed or used in said three buildings, likewise without my knowledge or consent." Fifth. That a written demand for the materials claimed by plaintiff to have passed to him under said bill of sale was served on defendant on or about February 5, 1900, with which he has not complied.

A careful consideration of the evidence leads me to the conclusion that it is established by a preponderance of the evidence that, prior to the execution and delivery of the bill of sale on January 9, 1900, by Riker to the plaintiff, Riker had actually taken possession of the materials and delivered them to Hall, with the exception of the lumber used in boarding up the windows and doors of the unfinished buildings, and on that day had no title or right of possession to the property he then assumed to sell to the plaintiff, and, also, that the damages recovered are largely in excess of those warranted by the evidence. The defendant is not liable in any event for more than the value of the material that had been stored in the shanty and was actually removed from it to his house by Bancker and Wales, in addition to the value of the boards of which the shanty was constructed. Riker testified that he did not measure any of the lumber, weigh any of the nails or paint, or make any list of the property stored except from memory. He says:

"I didn't take any particular notice. I just looked at it, and knew in a general way what was there."

This list was arbitrarily made from recollection alone, upon which values were placed aggregating $1,000. It is evident that this valuation is predicated on the assumption that the quantity and kinds of materials appearing on such list were actually taken from the shanty by defendant's direction and placed in his building. Bancker, who took the property out of the shanty and placed it in the unfinished building of the defendant, testifies that only a part of the property mentioned in the list of Lawrence was removed by the defendant. It appears that all the property taken from the shanty was taken possession of by Riker, who delivered it to Hall, by whom it was drawn at one load to his warehouse in Brooklyn, where his

receiving clerk made a written and itemized list of it. This list shows that it consisted only of the lumber testified to by Bancker as having been taken by him from the shanty, and does not include many of the items specified in the list upon which plaintiff's witnesses based their evidence of the aggregate value of the property. It is apparent that a large part of the verdict represents the value of property which, upon the most liberal view of the evidence that the plaintiff is entitled to, was never in defendant's possession, and for which he is not responsible or liable.

I am aware of the existence of the well-established general rule, so strongly urged by counsel for the respondent, that appellate courts will not set aside a verdict rendered upon conflicting evidence, or reverse a judgment entered thereon, merely because the verdict seems to be against the weight of evidence, and admit the justice of the contention that this court, not having had the benefit of a personal view of the witnesses and their appearance and manner of testifying, should give great weight to the conclusion of the jury, and have endeavored, in the consideration of the questions involved in this appeal, to keep strictly within these principles. It is an equally familiar rule that it is the duty of appellate courts, and they should not hesitate, to set aside a verdict as against the weight of evidence, where the ends of justice appear to require a new trial. The fact that this is the second verdict recovered by the plaintiff should not prevent the discharge of this duty.

I concur with the views expressed by Mr. Justice McLaughlin, in McCann v. New York & Queens County R. Co., 73 App. Div. 305, 76 N. Y. Supp. 684, peculiarly applicable to this appeal, that:

"A wrong committed, no matter how often, never makes a right. This verdict is wrong. It is the result of misconception, prejudice, or partiality, and ought not to be approved by this court. Upon substantially the same state of facts we have several times declared that the plaintiff ought not to recover, and yet we are about to permit a recovery, because the jury, forsooth, have for the fourth time committed the same wrong. The law imposes a duty upon this court to review verdicts, and whenever it can be seen that injustice has been done, by reason of the jury not properly considering the evidence, or that its action has been influenced either by prejudice or partiality, then the court ought, in the discharge of its duty, to fearlessly exercise the power given to it by the statute (Code Civ. Proc. § 1317), and right the wrong by setting the verdict aside and ordering a new trial; and this as many times as may be necessary to accomplish the proper result. Justice never tires, and an act ought not to be approved in its name which wrongfully takes property from one person and gives it to another."

It was estimated that 3,000 feet of lumber was used in the construction of the shanty, and the highest valuation placed upon this was $19.50 per thousand. This lumber was converted by the defendant, and a verdict for its value was justified by the evidence.

The judgment and order appealed from must be reversed, and a new trial granted, costs to abide the event, unless within 30 days after the entry of the order herein the respondent stipulate to reduce the verdict and judgment to the sum of $58.50, with interest thereon, in which event the judgment, as modified and the order appealed from, should be affirmed, without costs. All concur.