## GREEN v. WILBRAHAM.

(Circuit Court, D. New Jersey. November 20, 1909.)

MONEY RECEIVED (§ 4*)—CONTRACT—PRIVITY.

Plaintiff's contract for services provided that he should receive not less than $20 per week, and that when dividends paid by the employer corporation exceeded 5 per cent. plaintiff should then receive as additional compensation not less than $15 for each additional $100 in excess of the sum necessary to pay the 5 per cent. dividend, the balance of each of such $100 to be divided pro rata among the stockholders, and that all wages and additional wages or salary should be charged to the expenses of the company. *Held*, that such agreement did not make the additional wages provided for on dividends exceeding 5 per cent. being declared by the corporation, plaintiff's property, but simply fixed the amount of wages which he should from time to time receive, and hence, such additional wages not having been paid to plaintiff when dividends in excess of 5 per cent. were declared and paid to the stockholders, plaintiff could not recover a proportionate amount of such additional wages from each stockholder receiving such increased dividends in assumpsit for money received.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 7–13; Dec. Dig. § 4.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by Thomas W. Green against Thomas C. Wilbraham. On motion to strike out the first count of the declaration. Granted.

Walter H. Bacon, for the motion.

Malcolm Buchanan, opposed.

CROSS, District Judge. Briefly summarized, the first count of the declaration alleges that the plaintiff had a contract with all of the stockholders of Wilbraham-Baker Blower Company (a corporation of this state), of whom the defendant was one, whereby the plaintiff was to be continued as an employé of that corporation as theretofore, at $20 per week so long as the dividends declared by the company did not exceed 5 per cent. When the dividends, however, should exceed that rate, he was to be paid, as additional wages or salary, $15 out of each $100 of profits in excess of the sum necessary to pay the 5 per cent. dividend, which said additional sum of wages or salary was to be charged to the expenses of the company. It is then alleged that said agreement was approved by all of the stockholders of said corporation, at a special meeting held June 29, 1895, and by its board of directors at a meeting held July 15, 1895; that subsequently said corporation ceased business, and its assets, expressly including the said agreement, were thereupon taken over by the Wilbraham-Green Blower Company, a Pennsylvania corporation, which assumed all of its liabilities. The count in question also alleges that the plaintiff never received more than $20 per week as wages, although dividends in excess of 5 per cent. were declared on several occasions by each of said corporations; that plaintiff received his share thereof, and said defendant also received his share, without objection from the plaintiff, because he had forgotten the fact that under the agreement he was entitled to additional wages, although the defendant well knew it; and that the defendant by his joinder in the declaration of said dividends, and his receipt thereof, worked a fraud upon the plaintiff. Whereupon the plaintiff, as an employé of both corporations, sues the defendant as one of the stockholders, who united in said agreement, to recover back such part of the dividends declared by said corporations in excess of 5 per cent. as he had received. The portions of the excess dividends alleged to have been received by the defendant from time to time are set forth in detail, and the amount thereof is then demanded from the defendant as moneys had and received by him for the use of the plaintiff. Neither of the corporations is a party to the suit, and the suit is not directly founded upon the agreement. Twenty reasons why the count should be stricken out have been assigned, but were not discussed in detail at the argument, and will not be here. The fourth item of the agreement contains substantially all of the matter affecting this suit, and is as follows:

"Fourth. That said John S. Wilbraham and Thomas W. Green shall be employed by said company as heretofore and shall receive full and ample compensation for their services, such compensation to be fixed by the board of directors, with power to change the same as the necessities of the business require.

"Provided that the wages of John S. Wilbraham shall never be less than twenty dollars per week and the wages of Thomas W. Green shall never be

less than twenty dollars per week. The said wages however to be exclusive of additional wages or salary hereinafter mentioned. When the dividend to be paid exceeds the five per cent. as aforesaid, then the said John S. Wilbraham and Thomas W. Green shall receive additional wages or salary as hereinafter provided and the said John W. Wilbraham shall receive as full compensation as wages or salary not less than fifteen dollars from each additional one hundred dollars in excess of the sum necessary to pay the five per cent. dividend and the said John S. Wilbraham and Thomas W. Green shall receive as additional wages or salary a like compensation or in other words when the profits warrant a dividend in excess of five per cent. on the paid up capital, each of the aforesaid John W. Wilbraham, John S. Wilbraham, and Thomas W. Green, shall receive from each additional one hundred dollars the sum of fifteen dollars, and the balance of each one hundred dollars or fifty-five dollars shall be divided pro rata among the stockholders.

"Provided that at no time shall the aggregate amount of wages and salary paid either of the aforesaid be more than forty-five hundred dollars in any one year. All wages and additional wages or salary to be charged to the expenses of the company.

"In case of death of either of said recipients the weekly wages of said deceased shall cease at once and the wages or salary to be deducted from the dividend of the current year shall be determined proportionately."

It will be remarked at the outset that the agreement did not constitute the profits of the corporation in excess of the 5 per cent. dividend, or any part of them, the plaintiff's money. Such excess of profits were not then earned or in existence, and no charge upon them in his favor was thereby made or intended. The plaintiff was to receive certain stipulated wages or salary from the company, until it should be in a position to pay a dividend on its stock exceeding 5 per cent., when he was to receive more; but it still came from the company and was invariably styled by the agreement "additional wages or salary." The scheme was obviously devised not only to fix the amount of wages which the plaintiff should then receive, but also the amount which he should thereafter receive, if and when the prosperity of the company should warrant an increase. The plaintiff was not, however, by that agreement, made other than a creditor of the company to the account of which his wages were to be charged, and to which he assented when he affixed his signature thereto. That the plaintiff's compensation was, to a certain extent, contingent upon the earnings of the company, did not alter his relations to or constitute him other than an employé of the company. In Bennett v. Millville Improvement Company, 67 .N. J. Law, 320, 51 Atl. 706, it appeared that the plaintiff was to receive as compensation, in addition to a fixed sum, one-sixth of the clear net profits of the business, construing which the court held that it "was salary—payment for services—and not part of the profits, but part of the expenses of the business." It seems entirely clear, moreover, that the agreement under consideration did not provide a plan for the *payment* of the plaintiff's wages, but for fixing the amount of them from time to time. At first he was to receive from the company $20 per week, then a percentage of the profits over a certain sum, if there were any; but so far as appears his wages, whether more or less, were to be paid in the ordinary way. The case at bar then is that of a creditor of the corporation who does not pretend to stand upon his agreement with the stockholders, who does not sue the corporation itself for his wages, but who, on the contrary, ignoring all such methods, sues the defend-

ant as a stockholder for the share of the excess dividends received by him, and this too without any allegation of the insolvency or mismanagement of the corporation, or that, when the excess dividends were respectively declared and paid, there did not remain in its treasury a surplus fund sufficient to have paid not only the plaintiff, but all of its other creditors. The suit is anomalous, and since it is apparent that, in the event of its successful issue, the plaintiff at the most can only recover of this defendant a small proportion of the excess dividends paid by the corporations, a suspicion arises that possibly the corporation has an offset or other partial or complete defense to the claim. But, that aside, there is nothing in the count which shows that the plaintiff ex æquo et bono is entitled to demand and have of the defendant any part of the moneys he has received as dividends regularly declared by the directors of the corporation. The circumstances under which excessive and unwarranted dividends declared and paid by a corporation may be recovered back are prescribed by the statute, and the remedies thereby provided, certainly in the absence of express contract, are exclusive. It is sufficient to say that none of them contemplate a suit at law by a creditor against an individual stockholder upon an implied contract.

This action is based upon an implied assumpsit, but I find nothing in the alleged facts which warrant such an implication. The plaintiff was an employé of the company, and his wages, by his express agreement, were a part of its expenses. Nor is there anything in the agreement which authorized or suggests a suit of this character, for, while it is true that fraud on the part of the defendant is alleged, the facts relied on do not support the charge; at the most they constitute on his part a breach of the agreement. If any action could possibly be maintained thereon, it would only lie against all of the stockholders who jointly united in its execution. By it the plaintiff was to be continued in the service of the corporation, and the amount of his wages or salary, present and future, fixed, and, so far as this suit is concerned, that was all. Subsequently the agreement was assumed by both of the corporations.

Returning now to the question of implied assumpsit, it will be found that much looseness of expression has been used in stating, or attempting to state, when and under what circumstances such an action will lie. No better exposition of its nature and character, however, will readily be found than that given by Chief Justice Hornblower, in Sergeant v. Harris & Stryker, 16 N. J. Law, 464, 32 Am. Dec. 404. It is true that this is an old case; but it is equally true that the action of indebitatus assumpsit is old. In the case just referred to, it appears that a sheriff had offered a reward for the apprehension of an escaped prisoner. One Stryker arrested the prisoner and lodged him in jail in an adjoining county for safe-keeping until he could notify the sheriff offering the reward of the arrest. The following day Stryker went to the sheriff, notified him of the arrest, and claimed the reward, whereupon he learned that other persons had been to the sheriff, and, representing to him that they had arrested the prisoner, had claimed and received the reward. Stryker thereupon sued those

persons for the reward, as for moneys had and received to his use. The Supreme Court, however, held that the action would not lie, for the reason that there was no privity, expressed or implied, between the parties whereon to found the action. The reasoning of the Chief Justice in delivering the opinion of the court is instructive throughout; but only comparitively short extracts therefrom can be here given.

Speaking of the action of indebitatus assumpsit, he says:

"Broad and extensive as this action is, it has limits, beyond which it ought not to go; and the great difficulty is to prescribe those limits, and make them out by such specific and perceptible lines as leaves the mind in no doubt or perplexity. To say that it lies to 'recover back money which ought not to be kept'—for money, 'which ex æquo et bono the defendant ought to refund'—or 'for money which the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund,' or 'for money got through imposition,' or 'extortion,' or 'oppression,' or 'by mistake,' or 'by an undue advantage taken of the plaintiff's situation,' is, after all, dealing in generalities which afford us no specific rule, by which to test any particular case.

"Notwithstanding the universality of the expressions used in the books on this subject, there is and must be, in truth and justice, a limit to this action. It cannot be that every person having a legal demand and a right of action against a third person is at liberty to abandon his suit against such person, and, by a suit against me for money had and received, compel me to litigate with him and establish my right to moneys I may have received from his debtor."

And further on in his opinion, after analyzing some English cases, he adds:

"Stryker's right to recover in this suit, if he has any such right, is not because the sheriff paid the money voluntarily to the defendants, nor because they had no right to it in fact; but because they in fact, or by implication of law, received it for Stryker. That the sheriff did not pay the money to them, for Stryker, he expressly testifies; nor did they profess so to receive it, but, on the contrary, claimed it as their own. If then the law can raise any implication that the defendant received the money to and for the use of Stryker, it must be on the ground that they practiced a fraud on the sheriff. But I cannot well perceive how a fraud on one man can inure to the benefit of another; or how a fraud practiced on the sheriff can raise a promise to pay money to the plaintiff. If, indeed, the money had been paid to Stryker, and left by him in a bag, or purse, with the sheriff for safe-keeping, and the defendants had got possession of it by falsehood and misrepresentation, then it would have been a fraud on the plaintiff; it would have been his money, and he might have pursued it in this form of action. But, however unfair towards the sheriff the conduct of the defendants has been, they did not thereby get Stryker's money. They got Jones' money, and ex æquo et bono they ought not to retain it from him. They are bound by the ties of natural justice and equity to refund it to him. And, in his favor, the law considers it, in their hands, as money received by them to his use—not to the use of any other person. The money that Jones paid to Sergeant and Harris was no more Stryker's money than it was the money of any other creditor of Jones. * * * I think all the cases relied upon are such as go upon the plaintiff's title to the specific fund, or where, the third person having lawfully paid over the money, the plaintiff has no remedy against him; and this I think will be found to be the true criterion in such cases."

The foregoing case was cited and followed in Nolan v. Manton, 46 N. J. Law, 231, 50 Am. Rep. 403; Westcott v. Sharp, 50 N. J.

Law, 392, 13 Atl. 243. In Cary v. Curtis, 3 How. 236, at page 247 (11 L. Ed. 576), Mr. Justice Daniel, speaking of the form of action under consideration says:

"Another principle held to be fundamental to this action is this: That there must exist a privity between the plaintiff and defendant, something on which an obligation, an engagement, a promise from the latter to the former, can be implied, for if such implication be excluded from the relation between the parties by positive law, or by inevitable legal intendment, every foundation for the promise and of the action upon it is destroyed, for none can be presumed or permitted to promise what either law or reason does not warrant or may actually forbid."

As has already been said, the moneys sued for in the case at bar were never the property of the plaintiff, and were not received for him or to his use. The agreement did not make them his property, but rather fixed the amount of wages which he should from time to time receive. The moneys the corporation earned were its property until the directors had converted them into dividends, when they became the property of the stockholders. King v. Paterson, etc., R. Co., 29 N. J. Law, 82, s. c. 29 N. J. Law, 504.

The first count of the declaration will, accordingly, be stricken out. It sets up no cause of action against the defendant.