### WIGHT et al. v. HEUBLEIN et al.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1916.)

No. 1443.

1. CORPORATIONS ⬤⟲320(11)—MANAGEMENT BY DIRECTORS—SALARIES OF OFFICERS—EVIDENCE.

In a suit by a minority stockholder, evidence *held* to show that salaries of $15,000 for the president, $7,500 for the secretary-treasurer, and $4,200 for a salesman of the corporation, who composed the majority of the directors and voted the salaries to themselves, and who owned a majority of the stock, were excessive for the services rendered.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1437; Dec. Dig. ⬤⟲320(11).]

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CORPORATIONS ⬅︎320(1)—MANAGEMENT BY DIRECTORS—SALARIES OF OFFI-
CERS—EQUITABLE RELIEF.

While courts of equity will not assume to act as the managers of cor-
porate affairs, and will not interfere with the judgment of the directors in
making expenditures, where they are not interested adversely to the cor-
poration, they will interfere at the suit of a minority stockholder, where
the directors, who are trustees for all the stockholders, have voted to
themselves as officers salaries which, are excessive in view of the services
rendered, and which therefore amount to a legal fraud on the minority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1426; Dec.
Dig. ⬅︎320(1).]

3. CORPORATIONS ⬅︎320(13)—MANAGEMENT BY DIRECTORS—INJUNCTION.

In such a case, the relief is not limited to requiring a refund of the
excessive salaries paid in the past; but an injunction may be granted
which will prevent the payment,of such salaries so long as they are ex-
cessive, in view of the services rendered and the condition of the business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1430; Dec.
Dig. ⬅︎320(13).]

Appeal from the District Court of the United States for the Dis-
trict of Maryland, at Baltimore; John C. Rose, Judge.

Suit by Gilbert F. Heublein and another against John H. Wight,
and others. Decree for the plaintiff (227 Fed. 667), and defendants
appeal. Affirmed.

W. H. DeC. Wright, of Baltimore, Md. (Robert R. Carman, of
Baltimore, Md., on the brief), for appellants.

Vernon Cook, of Baltimore, Md. (Haman, Cook, Chesnut & Mar-
kell, of Baltimore, Md., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and JOHNSON,
District Judge.

KNAPP, Circuit Judge. For a detailed statement of facts refer-
ence is made to the opinion of the court below. Heublein v. Wight,
227 Fed. 667. The appellants contend, it is true, that these findings
are inaccurate or unwarranted in certain particulars; but we are sat-
isfied, after careful study of the record, that everything claimed in
that regard might be conceded without affecting the substantial mat-
ters upon which the learned District Judge based his decision.

The Sherwood Distilling Company, a Maryland corporation or-
ganized in 1882, has always been dominated by the Wights, as was
also the prior partnership which the corporation succeeded. It has
five directors, namely: John H. Wight, the president; his brother,
William H. Wight, the secretary-treasurer; Alpheus H. Wight, an-
other brother; Francis L. Wight, son of John H. Wight, a salesman;
and James W. Booth, representing the minority stockholder Heublein,
who brought this suit to enjoin the payment of salaries alleged to be
grossly excessive. Heublein owns one-third of the capital stock,
having bought a sixth about 1905, when the total was only $30,000,
and another sixth in 1913, when it had been increased to $700,000.
The other two-thirds is owned by members of the Wight family; John
H. Wight and William H. Wight together holding a majority. In
connection with the increase of stock in 1907, which was a mere re-

capitalization of the business, no additional money being put in, there was an issue of bonds, amounting to $300,000, which were distributed to the stockholders as a dividend. Of these Heublein received one-sixth, corresponding to his stock ownership at the time; but it seems that he obtained no additional bonds with the stock afterwards purchased.

Measured by volume of business the company has fairly maintained its record of prosperity. Taking the 10 years from 1906 to 1915, inclusive, each year ending with the 31st of July, the average has been about $470,000. The lowest years were 1908 and 1909, when it was under $400,000, and the highest was 1913, when it rose above $600,-000. The two following years, and notably 1915, showed a marked decline, though even this year was better than 1906, and not much below the average for the decade. But the company's net income, which was around $70,000 in 1906, has not nearly been maintained, and of late has fallen to comparatively low figures. For three years no dividends have been paid on the stock, and in 1915 the surplus over expenses was insufficient by upwards of $4,700 to pay interest on the outstanding bonds, and this without any charge for depreciation. Various reasons are put forward for this shrinkage of profits, and certainly not all of it can be laid to incompetent management; but, giving due weight to the explanations offered, the actual results of operation are still of significant bearing upon the reasonableness of the salaries in question.

These salaries were as follows: John H. Wight, president, $15,-000; William H. Wight, secretary-treasurer, $7,500; and Francis L. Wight, salesman, $4,200. The salaries of the first two were voted at a meeting of the board in 1905, when they and a bookkeeper in their employ were the only directors present; and these salaries were continued without change until reduced by the decree now under review. The salary of Francis L. Wight was fixed about July, 1914. Heublein frequently complained of these salaries and insisted upon their reduction, but his protests were wholly without avail. At the directors' meeting in July, 1915, the entire board being present and all the stock represented, the matter was again brought up, and Booth made a motion that the president's salary be reduced to $7,500, and the secretary's to $5,000; but the only affirmative vote was his own. Alpheus H. Wight refrained from voting at all, and the other three Wights voted in the negative. This suit was begun a few weeks afterwards.

[1] The nature of the issue and the range of relevant proof will appear from this brief recital of some of the salient facts. The voluminous testimony brings out in great detail the history and conduct of the distilling business so long controlled by the Wights, and this is supplemented with numerous exhibits, which include reports of the Baltimore Audit Company and a variety of statistical data. Upon all the evidence adduced the trial court has in effect found as a conclusion of fact that the salaries complained of are so excessive, so disproportionate to the value of any services rendered, that their continued payment, under existing conditions, is an injustice to minor-

ity stockholders which amounts to a legal fraud. We are satisfied that this finding is amply supported by the testimony. Indeed, in our judgment, the inference is justified by facts that are wholly undisputed. Certainly there is no such preponderance of opposing proof as would warrant us in reaching a different conclusion. Especially so, since the examination of the Wights in open court gave to the trial judge an opportunity, which the printed record does not afford, to observe these gentlemen at close range, and thus to form a reliable estimate of their business capacity and the reasonable value of their services.

[2] The acceptance of this finding as an established fact is a virtual decision of the controversy, for the law in such case is too well settled for discussion. Two citations will suffice. 3 Clark and Marshall on Corporations, page 2062, says:

"Both the stockholders and directors, in fixing compensation of officers, must act in good faith, and reasonably. While stockholders may vote at corporate meetings in fixing their own salaries as officers, and may elect directors, they cannot take advantage of their ownership of a controlling interest to vote themselves excessive salaries, or cause excessive salaries to be voted to them by directors whom they control. Nor can the directors vote excessive compensation to themselves or others. If they do so, a court of equity will give relief by injunction or decree for an accounting at the suit of the corporation, or of minority stockholders."

The underlying principle is well stated, citing a number of cases, in Wickersham v. Crittenden, 93 Cal. 17, 28 Pac. 788, as follows:

"The directors of a corporation hold a fiduciary relation to the stockholders, and have been intrusted by them with the management of the corporate property for the common benefit and advantage of each and every stockholder, and by their acceptance of this office they preclude themselves from doing any act, or engaging in any transaction, in which their private interest will conflict with the duty they owe to the stockholders, and from making any use of their power or of the corporate property for their own advantage."

It is obviously not the province of a court of equity to act as the general manager of a corporation or to assume the regulation of its internal affairs. If the chosen directors, without interests in conflict with the interest of stockholders, act in good faith in fixing salaries or incurring other expenses, their judgment will not ordinarily be reviewed by the courts, however unwise or mistaken it may appear; but this is far from saying that equity will refuse to redress the wrong done to a stockholder by the action or policy of directors, whether in voting themselves excessive salaries or otherwise, which operates to their own personal advantage, without any corresponding benefit to the corporation under their control. In this case the Wights own a majority of the stock and constitute a majority of the board of directors; and they have continued the salaries in question against the repeated protest of Heublein, and in the face of waning prosperity and an unpromising future. It is quite evident that they have long regarded this business as a purely family affair, with which no outsider, not even a minority stockholder, should be permitted to interfere. This attitude of mind, perhaps in large degree unconscious, may minimize the moral delinquency of their acts, but it cannot serve to avert the legal consequences

of what they have done. After painstaking scrutiny of the record, we are convinced, as the trial court found, that the salaries complained of are so much in excess of the value of the services for which they were ostensibly paid as to make the taking of them a breach of duty to the stockholders, and in effect a misappropriation of the company's funds, which entitles Heublein to the relief sought in this proceeding. ·

The case turns on this finding, and its affirmance leaves little occasion for further comment. By the decree appealed from the salary of John H. Wight is reduced to $7,500, the salary of William H. Wight to $5,000, and the salary of Francis L. Wight to $3,000; and we are of opinion that in fixing these amounts the treatment of the Wights has been considerate and even generous.

[3] It is argued that in any event the decree should be confined to requiring a refund to the company of salaries paid after a certain date in excess of the sums allowed and that it ought not to include what is said to be a perpetual injunction. But the circumstances here disclosed are peculiar, and, as it seems to us, of a somewhat aggravated character. It is not doubted that a court of equity has power in such a case to grant injunctive relief, and we are by no means persuaded that its exercise in this instance exceeds the limits of judicial discretion. Moreover, it must be assumed that the decree in question is based upon and has application only to existing conditions. If those conditions should undergo material change, so that large earnings were realized under efficient and capable management, it seems clear to us that the payment of proper and reasonable salaries, though greater than the amounts fixed by the decree, would not be prohibited by the injunction now in force. But in the present state of the company's affairs we are satisfied that the Wights have been given the full compensation to which they are entitled.

Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes