## ROGERS v. HILL et al.

### SAME v. TAYLOR et al.

### No. 391.

Circuit Court of Appeals, Second Circuit.

June 13, 1932.

[1] 143 Misc. 306, 257 N. Y. S. 321, affirmed 233 App. Div. 708, 249 N. Y. S. 993.

SWAN, Circuit Judge, dissenting.

See, also, 53 F.(2d) 395.

Chadbourne, Stanchfield & Levy, of New York City (Nathan L. Miller, Victor J. Dowling, George W. Whiteside, and J. Arthur Leve, all of New York City, of counsel), for appellants Hill, Neiley, Riggio, Taylor, and American Tobacco Co.

Richard Reid Rogers, of New York City, pro se.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellee is the owner of 200 shares of common and 400 shares of common B stock, and seeks a decree declaring article XII of the by-laws of the American Tobacco Company invalid and ordering that all compensation paid thereunder to appellants be repaid to the corporation and future payments be perpetually enjoined. It is sought to have the court fix the amount of compensation to which the appellants, officers of the corporation, are justly entitled during their respective periods of service and that in the future the officers receive no additional contingent compensation. On motion by the appellee to strike out each of the five separate defenses interposed by the appellants, the court held that they were insufficient.

On March 13, 1912, the stockholders of the American Tobacco Company, appellant, adopted as a by-law article XII, which provided:

"As soon as practicable after the end of the year 1912 and of each year of the company's operations thereafter, the Treasurer of the Company shall ascertain the net profits, as hereinafter defined, earned by the Company during such year, and if such net profits exceed the sum of $8,222,245.82, which is the estimated amount of such net profits earned during the year 1910 by the businesses that now belong to the Company, the Treasurer shall pay an amount equal in the aggregate to ten per cent. of such excess to the President and five Vice-Presidents of the Company in the following proportions, to wit: One-fourth thereof, or 2½ per cent. of such amount, to the President; one-fifth of the remainder thereof, or 1½ per cent. of such amount, to each of the five Vice-Presidents as salary for the year, in addition to the fixed salary of each of said officers."

By section 5 of this by-law, it was provided that the by-law may be modified or repealed only by action of the stockholders of the company and not by the directors. The by-law was adopted by a large majority in interest of the company's shares, 35 preferred shares voting against its adoption. Appellee became a stockholder in 1916. Appellant Hill became a director in 1921, and president on April 7, 1926; appellant Mower, a director on April 6, 1921, and has since become a vice president; appellant Penn, a director on April 6, 1921, and since a vice president; appellant Neiley, a director on April 6, 1921, and a vice president May 1, 1929; appellant Riggio, a director on April 4, 1928, and a vice president May 1, 1929.

Until the present suit was instituted, the legality of this by-law was never questioned. The charges of illegality are: (a) That by the charter of the company, the directors are empowered to apply surplus or net profits only to the acquisition of property or the payment of dividends, and they are not authorized to divert any portion of the profits to officers of the corporation by way of additional compensation; (b) that profit participation by the officers and employees of a New Jersey corporation was not legal prior to the passage of chapter 175, p. 354, of the Laws of 1920, subsection (b), § 1 (Comp. St. Supp. § 47—183); (c) that the power to make and alter by-laws was conferred upon the directors, and the stockholders had no power to adopt the by-laws; (d) that the notice of the meeting at which the by-law was adopted did not specify the officers to whom the profit participation was to be paid, that it did not specify that the profit participation was to be paid to the officers as salaries in addition to their fixed salaries, and

did not state that the participation was to be continued beyond the year when adopted.

Among the defenses which were held below to be insufficient were:

(1) That the stockholders of the company, including the appellee, ratified the payments made to the appellants in accordance with and under the authority of article XII.

(2) That the present suit is an attempt to interfere with the internal management of a corporation doing a nationwide business, the affairs of which are dependent upon the statutes of New Jersey, and that by-law XII was legally adopted and is valid.

(3) That the amount of compensation paid to the individual appellants was and is fair and reasonable for their services, that the board of directors had the right to fix the compensation of its agents, and that the payments were made in accordance therewith, as well as under the authority of by-law XII.

When the appellee purchased his stock, he was presumed to know the provisions of the corporation's by-laws, and he made his investment with that knowledge. Giesen v. London & Northwest American Mortgage Co., 102 F. 584 (C. C. A. 8); Kavanaugh v. Commonwealth Trust Co., 223 N. Y. 103, 119 N. E. 237; State v. Shaw, 103 Ohio St. 660, 134 N. E. 643; Chicago, Springfield & St. L. Ry. Co. v. Martin, 249 Ill. App. 109. The charter of the corporation (article II) provides, among other things, that the directors shall have the power "to direct and determine the use and disposition of any surplus or net profits or earnings over and above the capital stock paid in." Directors have power to hire employees. Nothing in the by-laws of this corporation forbade employing them upon a contingent basis. There is no rule of law of which we are aware that forbids directors from providing contingent or fixed compensation for the employees of a corporation, providing the agreements are fair and free from fraud. But the claim is advanced by the appellee that the directors were empowered to employ surplus, net profits or earnings only in the acquisition of property or in payment of dividends, and that the additional salary allotments here are in direct conflict with the charter provisions. Compensation to officers of a corporation is an operating expense of the company, whether at a fixed salary or based upon a percentage of the profits, and until such expenditures are met there are no net profits of the corporation. It is the sum beyond this which constitutes the surplus, net profits, or earn-

ings referred to in this corporation's charter. Profit participation creates an item of expense in the operation of the business, and this has been recognized by judicial decisions in New Jersey, the state of the corporation's creation. Bennett v. Millville Improvement Co., 67 N. J. Law, 320, 51 A. 706; Booth v. Beattie, 95 N. J. Eq. 776, 118 A. 257, 123 A. 925; Berendt v. Bethlehem Steel Co., 108 N. J. Eq. 148, 154 A. 321.

Under the General Corporation Law of New Jersey (Chapter 175, p. 354, Laws 1920 [Comp. St. Supp. N. J. § 47—183 et seq.]), stockholders have adequate power to pay officers an additional and contingent salary out of net profits. Section 1, paragraph 5 (2 Comp. St. N. J. 1910, p. 1598, § 1, par. 5), provides that every corporation shall have power to appoint such officers and agents as the business of the corporation shall require and to allow them suitable compensation. By-law XII is in strict conformity with the express powers delegated to the corporation by the General Corporation Act of New Jersey. Bennett v. Millville Improvement Co., supra. The right to pay compensation by way of a percentage of the net profits is recognized in New Jersey. Smith v. Bedell, 84 N. J. Eq. 268, 96 A. 898, affirmed 84 N. J. Eq. 509, 96 A. 898; Booth v. Beattie, supra. Corporate management may pay a participation of the net profits to officers as additional salary either as a bonus or in the form of shares of stock. Harker v. Ralston, 45 F. (2d) 929 (C. C. A. 7); Church v. Harnit, 35 F.(2d) 499 (C. C. A. 6); Ransome v. Moody, 282 F. 29 (C. C. A. 2); Green v. Wilbraham (C. C.) 190 F. 274; Young v. U. S. Mortg. & Trust Co., 214 N. Y. 279, 108 N. E. 418.

It is argued that the phrase "profit participation" was first mentioned in a New Jersey statute in chapter 175, p. 354, of the Laws of 1920, and this was the first permission for payment of contingent salaries. It is argued that, prior thereto, the payment of moneys out of alleged profits was illegal. Section 4 of the act (Comp. St. Supp. N. J. § 47—186) provides:

"The privileges and powers conferred by this act shall be deemed to be in addition to and independent of any and all powers and authority conferred by any other law or laws, and not in restriction or limitation of any of the powers now permitted to corporations of this State."

Profit participation by employees is not only within the express power of the corporation prior to the enactment of the 1920

statute, but was recognized by the courts of New Jersey as an implied power of the corporation. Chapter 175 of the Laws of 1920 provided for the particular manner in which such plans therein specified could be adopted. That act authorized the adoption of profit participation; it permitted New Jersey corporations to adopt a plan for the purpose of "furnishing to its employees wholly or in part at the expense of such corporation of medical services, insurance against accident, sickness or death, pensions during old age, disability or unemployment, education, housing, social services, recreation or other similar aids for their general welfare." The New Jersey courts, as early as 1899, held the adoption of such plans to be within the implied or express powers of a foreign corporation. Beck v. Pennsylvania R. R. Co., 63 N. J. Law, 232, 43 A. 908, 76 Am. St. Rep. 211.

■ Section 11 of the General Corporation Law of New Jersey (Revision of 1896, c. 185 [2 Comp. St. N. J. 1910, p. 1606, § 11]), provides that the power to make and alter by-laws shall be in the stockholders, but that any corporation may, in its certificate of incorporation, confer that power upon the directors, and the by-laws made by the directors under such power may be altered or repealed by the stockholders. The charter of this corporation provided that the power to make and alter the by-laws of the corporation shall be conferred upon the directors. This delegation of authority to directors, within the by-laws, is legal. To make or amend by-laws is legal. In re Griffing Iron Co., 63 N. J. Law, 168, 41 A. 931, affirmed 63 N. J. Law, 357, 46 A. 1097. The regulation of official duties and salaries is a proper subject for by-laws as within the power of the stockholders or the power of the directors where they are authorized to act. Lillard v. Oil, Paint & Drug Co., 70 N. J. Eq. 197, 56 A. 254, 58 A. 188.

■ But it is contended that the notice of the meeting at which article XII was adopted by the corporation's shareholders was insufficient. The meeting was held March 13, 1912, and it was pursuant to section 17 of the General Corporation Act of New Jersey (Laws of 1896, c. 185, p. 282, as amended by Laws of 1901, c. 119, § 1 [2 Comp. St. N. J. 1910, p. 1608, § 17]), which permits every corporation to determine by its certificate of incorporation or by-laws the manner of calling and conducting all meetings. Special meetings to make fundamental changes in the corporation require notice of meetings pursuant to the by-laws (section 27, Laws of 1896, c. 185, p. 285, as amended by Laws of 1908, c. 84, p. 127, § 1 [2 Comp. St. N. J. 1910, p. 1612, § 27]).

Article II, § 3, of the by-laws, provides that due notice of each annual meeting of the stockholders be given by a written or printed notice, mailed at least 20 days prior to the meeting, to each stockholder entitled to vote appearing upon the books of the corporation. It is provided that a public notice of the time and place of holding such meeting be published not less than once a week for two consecutive weeks in a daily newspaper published in the city of New York. Special meetings are called in like manner, and for these "the notice shall state the object of the special meeting, and no other business shall be transacted at such meeting." From this it is apparent that neither the by-laws of the corporation nor the statutes of New Jersey required a notice of any meeting to include a specification of the details of the business to be conducted. Under the by-laws, the object must be stated only for a special meeting. The by-law here (article XII) was adopted at a regular annual meeting, and the by-laws of the corporation provide that at such meeting "any business may be transacted without notice of the object of such meeting." There was ample notice given to the stockholders on the occasion of the adoption of this by-law. All shareholders were given a written notice stating the date, hour, and place of the meeting. It was further said in the notice: "At this meeting there will be presented for consideration, and action upon, a proposed by-law providing for participation by certain officers of the Company in profits, if any, earned by the Company in excess of profits earned during the year 1910 on the brands of businesses now owned by the Company, not exceeding in the aggregate 10% of such excess." The appellee maintains that the by-law could not be passed upon at this meeting because the object set out in the notice was participation by certain officers of the corporation in its profits, and therefore no object which dealt merely with salary increases could be passed. This complaint against the notice is frivolous. It sufficiently informed shareholders that a subject-matter to be considered was the payment to certain officers of a contingent salary. By any reasonable inquiry at the meeting, or prior thereto, one to whom this notice was insufficient might have gained further knowledge or surely would have been in a position to vote his

shares of stock intelligently. United States Steel Corp. v. Hodge, 64 N. J. Eq. 807, 54 A. 1, 60 L. R. A. 742.

Moreover, as we have pointed out, the present officers, who are enjoined by the order below, became such years after the adoption of by-law XII, providing additional salaries. When they accepted their offices and employment in the corporation, one of the promises of the corporation was their right to compensation for services, measured by additional profits above the sum specified in the by-law. It became part of the contract of employment. It was a promise which the corporation must keep until the by-law is repealed or changed. Metropolitan Rubber Co. v. Place, 147 F. 90 (C. C. A. 2); Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214, Ann. Cas. 1914A, 793. There is no claim in the bill, nor can the argument be maintained, that there was any fraud or collusion in the passage of this by-law between appellants who have enjoyed the fruits of its enactment and the corporation. The by-law is neither ultra vires, fraudulent, nor illegal, and, since it is not, courts must refuse intervention because they are powerless to grant it. Here the matter of salaries, like that of other corporation affairs, must be disposed of by the majority of stockholders and in the manner that their interests may dictate, and the action of the majority is binding upon all, whether approved or disapproved by the minority. Individual minority shareholders are not permitted to question the acts of directors, if they are within the powers of the corporation and in furtherance of its purposes, and if they are not unlawful or against good morals and are done in good faith and in the exercise of honest judgment. United States Steel Corp. v. Hodge, supra. By-law XII was properly passed and became a valid governing act of the corporation.

This grew to be a very large corporation. On the 1st of January, 1931, its corporate structure was as follows: Preferred stock, par value $100 per share, outstanding $52,-699,700; common stock, par value $25, authorized $50,000,000, outstanding $40,242,-400; common stock B, par value $25, authorized $100,000,000, outstanding $76,933,950. Its current liabilities were approximately $5,-000,000; current quick assets were approximately $147,000,000. It was world-wide in its operations. In 1930, its net earnings, after deducting all charges and expenses for management and taxes, amounted to $43,345,-370; it paid dividends on common stock in 1930 of $29,294,000; an extra dividend of $1 was declared in the first quarter of 1931; total dividends paid on its common stock for that year exceeded $28,300,000; and it paid $3,161,982 dividends on its preferred stock. In 1930 it paid to the government $150,000,-000 in taxes. During the corporate management of the individual appellants, profits increased some $20,000,000 a year up to 1930. There was divided in 1931 approximately $2,-500,000 pursuant to the terms of by-law XII amongst the president and five vice presidents.

The corporation has had a very unusual success due to the skillful management of these able men. With this knowledge at hand, the majority of the stockholders might well have approved the policy year after year of a contingent compensation to the active managers of the corporation's business affairs. They were justified in the retention of by-law XII during this period of years because of the great success attained. That the president and five vice presidents each received unusually large salaries as a result does not justify a court of equity in attempting to substitute its judgment for the judgment of the stockholders whose affair it is in the absence of any claim of fraud. In any case, we think that the by-law was lawfully passed, and that it was valid, effective, and controlling in the allotment of additional compensation to officers of the corporation.

Judgment reversed.

SWAN, Circuit Judge (dissenting).

In 1912 the stockholders of the appellant adopted a by-law which provided that 10 per cent. of the annual "net profits" be distributed, $2\frac{1}{2}$ per cent. to the president and $1\frac{1}{2}$ per cent. to each of the five vice presidents "in addition to the fixed salary of each of said officers." The by-law does not expressly say that the payments provided for are by way of additional compensation to the officers, and the notice of the meeting at which the by-law was adopted referred to the proposed resolution as one for the distribution of profits. If it was really a distribution of profits rather than a method of compensation, the majority stockholders had no power to vote it. I shall assume, however, that the by-law was valid when passed. But it does not follow that it will remain valid for all time regardless of the amount payable under it. If a bonus payment has no relation to the value of services for which it is given, it is in reality a gift

in part, and the majority stockholders have no power to give away corporate property against the protest of the minority. See Endicott v. Marvel, 81 N. J. Eq. 378, 384, 87 A. 230; Collins v. Hite, 109 W. Va. 79, 153 S. E. 240.

The present suits attack payments made under the by-law since 1921, totaling more than $10,000,000, and seek an injunction against further payments. The bonuses paid to the president increased from $90,000 in 1921 to $840,000 in 1930. In the latter year his additional emoluments included a fixed salary of $168,000 and "special cash credits" of $270,000. Bonuses paid four of the vice presidents for that year totaled $1,830,000, in addition to which they received fixed salaries and special credits totaling $700,000. Apparently these sums were thought insufficient, for in that same year the board of directors initiated a plan which resulted in the distribution to these five officers and directors of almost 30,000 shares of stock at $87 per share less than its then market value. The court below thought that a sufficient showing of invalidity had been made to justify a temporary injunction against future payments under the by-law. In my opinion a bonus of $840,000 to an officer receiving a fixed salary of $168,000 is presumptively so much beyond fair compensation for services as to make a prima facie showing that the corporation is giving away money, and a by-law which sanctions this is prima facie unreasonable, and hence unlawful. This is all we need to hold to support the injunction pendente lite.

The determination of fair compensation for services is primarily for the directors. Courts hesitate to overrule the discretion of directors fairly exercised. Here the directors have exercised no discretion; they rely upon a by-law to relieve them of that duty, and the by-law, as it now operates, results in so large a payment that the trial court thought it probably invalid as applied to future earnings. Under such circumstances the courts do not and should not refuse to consider whether a bonus plan is fair or oppressive. See Sotter v. Coatesville Boiler Works, 257 Pa. 411, 101 A. 744; Collins v. Hite, 109 W. Va. 79, 153 S. E. 240; Wight v. Heublein, 238 F. 321 (C. C. A. 4); Nichols v. Olympia Veneer Co., 139 Wash. 305, 246 P. 941, 48 A. L. R. 504; McKey v. Swenson, 232 Mich. 505, 205 N. W. 583, 586; Lowman v. Harvey R. Pierce Co., 276 Pa. 382, 120 A. 404; Scott v. P. Lorillard Co., 108 N. J. Eq. 153, 154 A. 515, affirmed 109 N. J. Eq. 417, 157 A. 388; Berendt v. Bethlehem Steel Corp., 108 N. J.

Eq. 148, 154 A. 321; Stratis v. Andreson, 254 Mass. 536, 150 N. E. 832, 44 A. L. R. 567; Ransome Concrete Machinery Co. v. Moody, 282 F. 29, 32 (C. C. A. 2); Church v. Harnit, 35 F.(2d) 499, 502 (C. C. A. 6); Booth v. Beattie, 95 N. J. Eq. 776, 118 A. 257, affirmed 95 N. J. Eq. 776, 123 A. 925; Putnam v. Juvenile Shoe Corp., 307 Mo. 74, 269 S. W. 593, 40 A. L. R. 1412. I think the injunction pendente lite should be affirmed.