(156 App. Div. 515.)

### YOUNG v. UNITED STATES MORTGAGE & TRUST CO.

(Supreme Court, Appellate Division, First Department. May 2, 1913.)

1. CORPORATIONS (§ 308*)—OFFICERS—COMPENSATION—HONORARIUM.

Plaintiff was employed as defendant's president at a salary of $25,-000 a year. Defendant's executive committee recommended to the directors that they award him as compensation, in addition to his salary, a participation in the net profits of the company during the pleasure of the board. This recommendation having been adopted, the executive committee passed a resolution that plaintiff be paid as an honorarium 5 per cent. of the company's net earnings for the six months ending December 31, 1899, which was paid on the following day. Thereafter no payments were made to him from the company's profits during 1900, but on December 31, 1901, under similar circumstances, he was paid 5 per cent. of the net profits of the business during the years 1900 and 1901. *Held*, that such facts did not constitute a contract between plaintiff and the company binding it to pay plaintiff any part of its profits in the future.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

2. CORPORATIONS (§ 299*)—EXECUTIVE COMMITTEE—POWERS.

Where the directors of a corporation authorized its executive committee to pay its president a part of the company's profits as an honorarium in addition to salary, the committee, in carrying out the authority so conferred, could only act as a board, and could not delegate the power to an individual member; nor could such member bind the company by any arrangement made which was not subsequently ratified by the committee itself and shown by a resolution duly passed by it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1333; Dec. Dig. § 299.*]

Appeal from Special Term, New York County.

Action by George W. Young against the United States Mortgage & Trust Company. From an order (131 N. Y. Supp. 33) setting aside a verdict for plaintiff and granting a new trial, he appeals. Modified by directing entry of judgment dismissing the complaint, with costs.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, and DOWLING, JJ.

Austen G. Fox, of New York City, for appellant.
John M. Bowers, of New York City, for respondent.

McLAUGHLIN, J. Action to recover 5 per cent. of the net profits of defendant's business from January 1, 1902, to March 30, 1905. Plaintiff had a verdict for $158,262.67, which the court, on motion of the defendant, set aside as contrary to the evidence, and granted a new trial. Plaintiff appeals.

The right to maintain the action is based upon an alleged contract between the parties to the effect that the defendant would pay to the plaintiff, in addition to a fixed salary, 5 per cent. of the net profits of its business during the time he should continue to act as its president. The answer admitted that the plaintiff served as its president during the time alleged, but denied the other material allegations upon which a recovery was sought. At the conclusion of the trial the evidence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

did not establish the contract alleged; nor did it justify the jury in finding that the defendant was in any way indebted to the plaintiff. For this reason the verdict was properly set aside, because a verdict should have been directed in favor of the defendant.

[1] It appears that on the 22d of June, 1899, the plaintiff was the president of the defendant, receiving a salary of $25,000 a year; that on that day he had a conversation with Mr. McCurdy, the president of the Mutual Life Insurance Company, which owned a majority of defendant's stock; that immediately following this conversation they attended a meeting of the executive committee of the defendant, both being members, when, at the suggestion of McCurdy, the following resolution was passed:

"Resolved, that the executive committee recommend to the board that they be authorized to award to the president, in compensation for his services, in addition to his regular salary, a participation in the net profits of the company during the pleasure of the board"

—and that after the passage of the resolution, at a meeting of the board of directors held the same day, plaintiff being present, it passed a resolution that:

"The recommendation of the executive committee at their meeting held this day regarding the award to the president for additional compensation for his services, over and above his regular salary, is approved and adopted."

In pursuance of these resolutions, on the 18th of January, 1900, at a meeting of the executive committee at which the plaintiff was also present, a resolution was passed to the effect that the plaintiff be paid as "an honorarium" 5 per cent. of the net earnings of the company for the six months ending December 31, 1899, and on the following day he was paid that amount, viz., $19,270, by crediting the same to his individual account. Thereafter the plaintiff did not ask for and no payments were made to him on the net profits of the company during the year 1900, but on the 31st of December, 1901, under circumstances similar to those under which the prior payment was made, he was paid $56,731.30, which was 5 per cent. of the net profits of defendant's business during the years 1900 and 1901. The resolutions of the executive committee and the board of directors were, subsequent to their adoption, approved and ratified by defendant's stockholders.

The foregoing is all the evidence there is showing any corporate action with reference to the making of the alleged contract or binding the defendant in any way to pay the plaintiff a compensation in addition to his salary. The contract sued on is predicated, as it necessarily must be, upon the resolution of June 22, 1899, and it requires but the slightest consideration to show that such resolution did not bind the defendant to pay the amount here sought to be recovered. The additional payment was to be not for a definite period, but only during the pleasure of the board. It was not to be additional compensation, but simply as "an honorarium"—a payment in recognition of services performed, which the trust company was under no legal obligation to make. The plaintiff understood the meaning of the word "honorarium," because when his salary was fixed at $25,000 he was then given "an honorarium" of $10,000, in recognition of the services

which he had performed "in relation to the Royal Baking Powder Company."

[2] I have not deemed it important to consider what took place between the plaintiff, Mr. McCurdy, and others, prior to the passage of the resolution of June 22, 1899, because if it be assumed the executive committee had the power to give to the plaintiff a compensation in addition to his salary it could only do so by acting as a board. The board could not delegate this power to an individual member of the committee; nor could such member, by any arrangement made, unless subsequently ratified by the board, bind the defendant. Such ratification could only be established by a resolution duly passed by the committee itself. If arrangements made with an individual member of an executive committee or board of directors could be legally enforced, then it is not difficult to imagine how the property of a corporation could be taken from it without its ever having taken any action thereon, or even having had any knowledge thereof.

The resolution of June 22d did not bind the defendant to pay anything. It was, at most, but a recommendation to the board of directors to authorize the executive committee to pay to the president a portion of the profits, not for any particular time, but solely "during the pleasure of the board." This was so understood by the executive committee, as evidenced by its subsequent acts with reference to the payments, because in each instance reference was made to the approval of the board of directors. It was also so understood by the plaintiff, as evidenced by the fact that he made no claim for extra compensation, and in the reports made to the Superintendent of Banks, verified by him, no reference was made as to the defendant's being under a liability for extra compensation. It is incredible, if the plaintiff supposed he had a claim for which defendant was legally liable, that the reports would have been verified by him without some reference to it. The resolutions and the acts of the parties clearly and conclusively, as it seems to me, establish that the plaintiff's claim here sought to be enforced has no legal foundation whatever.

If this conclusion be correct, then the trial court should, at the close of the trial, have granted defendant's motion and dismissed the complaint.

The plaintiff having stipulated that in the event of this court holding that on all the evidence the trial court ought to have dismissed the complaint or directed a verdict, so far as procedure is concerned, this court may give such direction, the same as if the power to do so had been conferred by statute, the order appealed from is modified by directing that a judgment be entered dismissing the complaint, with costs, and costs of appeal. All concur.