GEORGE W. YOUNG, Appellant, *v.* UNITED STATES MORTGAGE AND TRUST COMPANY, Respondent.

Corporations — when bound by acts of duly authorized agents — validity of agreement by directors of corporation to give officer thereof a percentage of profits for extra compensation for his services — appeal — when Court of Appeals cannot review order setting aside verdict as against weight of evidence.

1. A corporation may be bound by the acts of its duly authorized agents in the same way that a natural person may be bound, and a formal resolution is not necessary to establish an act which can only be performed by a board or committee acting as a body.

2. The plaintiff sues to recover a percentage of the net profits of the defendant's business for a period of about three years as extra compensation for his services as its president, pursuant to an alleged oral agreement made with the executive committee of the board of directors, claimed to have been authorized by the board and ratified by the shareholders. It appears that a resolution of the board of directors authorizing the executive committee to award the president a participation in net profits as compensation for services in addition to regular salary was ratified by the stockholders, as were also two payments of the percentage of the net profits claimed to have been agreed upon. The executive committee did not by formal vote agree to pay the plaintiff an extra compensation of five per cent of the net profits, but, since an agreement may be inferred from tacit approval, *held*, that a jury could have found from facts proven that the executive committee approved of a proposal theretofore made and brought to its attention to pay the plaintiff five per cent of the net profits to induce him to remain in the defendants' employ, and that upon the approval of the resolution by the board of directors, the minds of the parties, the plaintiff and the executive committee, met upon the proposition, and on that understanding the plaintiff continued in the service of the defendant. (*Trustees of Southampton* v. *Jessup*, 173 N. Y. 84, distinguished.)

3. Final judgment cannot be awarded, since this court cannot review the order of the trial court setting aside the verdict as against the weight of evidence, where it does not appear that the Appellate Division has considered that phase of the case.

*Young* v. *United States Mortgage & Trust Co.*, 156 App. Div. 515, reversed.

(Argued January 25, 1915; decided February 25, 1915.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1913, upon an order which modified an order of the court at a Trial Term setting aside a verdict in favor of plaintiff and granting a new trial by directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Austen G. Fox* and *William H. Beam* for appellant. The oral understanding between the plaintiff and the members of defendant's executive committee, made at a

regular meeting of the committee, and executed by the plaintiff, is binding on the defendant, even though the resolution that was passed failed to express the terms of the understanding, and even though no resolution embodying the contract was passed at any time. (*Fister* v. *La Rue*, 15 Barb. 323; *Hooker* v. *Eagle Bank*, 30 N. Y. 86; *Starbuck* v. *Housatonic R. R. Co.*, 83 Hun, 534; *Jordan* v. *L. I. R. R. Co.*, 115 N. Y. 385; *Reuter* v. *E. Tel. Co.*, 6 E. & B. 341; *Milledge* v. *Boston Iron Co.*, 5 Cush. 158; *Union Bank* v. *Ridgeley*, 1 H. & G. [Md.] 324; *Canal Bridge* v. *Gordon*, 1 Pick. 314; *Horne* v. *Ivie*, 1 Vent. 47; *Arapahoe Cattle Co.* v. *Stevens*, 13 Col. 534; *Walter* v. *Bank of Kentucky*, 26 Ky. 201.) The true rule is that an oral contract fixing the compensation of an officer and made on behalf of a corporation, which, if made between individuals would be valid, is valid against the corporation, provided it is made by a person or persons authorized to act on its behalf. (*Gaul* v. *Kiel & Arthe Co.*, 199 N. Y. 472; *Peterson* v. *Mayor, etc.*, 17 N. Y. 449; *Bank* v. *Dandridge*, 12 Wheat. 64; *Matter of Gouverneur Pub. Co.*, 168 Fed. Rep. 113; *Dupignac* v. *Bernstein*, 37 Misc. Rep. 677; *Bagley* v. *C., W. & S. H. R. R. Co.*, 25 App. Div. 475; *Meislahn* v. *Irving Nat. Bank*, 62 App. Div. 231; *Hooker* v. *Eagle Bank*, 30 N. Y. 83; *Cunningham* v. *M. S. & F. C. R. R. Co.*, 63 Hun, 439; *Legrand* v. *M. M. Assn.*, 80 N. Y. 638.) The resolution and other proof raised, at most, only a question of fact, and warranted inferences that were, at least, as favorable to the plaintiff as to the defendant. (*Shaw* v. *Stone*, 1 Cush. 228; *Benton* v. *Springfield Assn.*, 170 Mass. 534; *Bartlett* v. *M. R. Co.*, 151 Mass. 433; *Matter of Gouverneur Pub. Co.*, 168 Fed. Rep. 115; *Grath* v. *Roofing Tile Co.*, 121 Mo. App. 245; *McDonald* v. *M. S. Ry. Co.*, 167 N. Y. 66; *Fitzgerald & Mallory Co.* v. *Fitzgerald*, 137 U. S. 98; *Marcy* v. *S. F., etc., Ry. Co.*, 210 Mass. 197; *Witherow* v. *Slayback*, 158 N. Y. 649; *Fealey* v. *Bull*, 163 N. Y. 397.)

*John M. Bowers* and *Gerald S. O'Loughlin* for respondent. Oral evidence may not be used to contradict or vary the written memorial (the resolution) adopted by the parties as the culmination of their negotiations on the subject, (*Thomas* v. *Scutt,* 127 N. Y. 133; *A. R. Co.* v. *Howard,* 211 N. Y. 430; *Smith* v. *Dotterweich,* 200 N. Y. 299; *House* v. *Walch,* 144 N. Y. 418; *Uihlein* v. *Matthews,* 172 N. Y. 154; *Brantingham* v. *Huff,* 174 N. Y. 53; *Murdock* v. *Gould,* 193 N. Y. 369; *Lossing* v. *Cushman,* 195 N. Y. 386; *Lese* v. *Lamprecht,* 196 N. Y. 32; *Studwell* v. *Bush Co.,* 206 N. Y. 416; *Housekeeping Publishing Co.* v. *Swift,* 97 Fed. Rep. 290.) In any aspect of the case the contract claimed by plaintiff was void. (*Carney* v. *N. Y. L. Ins. Co.,* 162 N. Y. 453; *Beers* v. *N. Y. L. Ins. Co.,* 66 Hun, 75; *Jacobson* v. *B. L. Co.,* 184 N. Y. 152; *McNab* v. *McNab,* 62 Hun, 18; *Kelsey* v. *Sargent,* 40 Hun, 150; *Mather* v. *E. M. Co.,* 118 N. Y. 689; *Ellis* v. *Ward,* 137 Ill. 509; *Besch* v. *W. C. Mfg. Co.,* 36 Mo. App. 333; *Pierce* v. *Morse-Oliver Co.,* 94 Me. 406; *Caldwell* v. *Mutual Reserve Fund Life Assn.,* 53 App. Div. 245; *Constant* v. *Rector, etc.,* 4 Daly, 305; *People's Bank* v. *St. Anthony's Church,* 109 N. Y. 512; *Columbia Bank* v. *Gospel T. C.,* 127 N. Y. 361.)

MILLER, J. The plaintiff sues to recover 5% of the net profits of the defendant's business from January 1st, 1902, to March 30th, 1905, as extra compensation for his services as president pursuant to an alleged oral agreement made with the executive committee of the board of directors, claimed to have been authorized by the board and ratified by the shareholders. The trial court submitted to the jury as a question of fact whether the agreement was made as claimed by the plaintiff, but set aside the verdict in favor of the plaintiff as against the weight of evidence. The Appellate Division held that there was no evidence of a contract; that the action of

the board of directors and of the executive committee could only be established by a resolution duly passed.

On June 22, 1899, the executive committee of the defendant's board of directors adopted the following resolution: "*Resolved*, that the executive committee recommend to the board that they be authorized to award to the president in compensation for his services and in addition to his regular salary, a participation in the net profits of the Company during the pleasure of the board," and thereafter on the same day its board of directors approved and adopted said recommendation.    On March 8th, 1900, at a meeting of the stockholders those acts among others of the directors and executive committee were by resolution ratified and approved.    On January 18th, 1900, the executive committee adopted the following: "*Resolved*, that pursuant to the provisions of the resolution of the executive commitee, passed June 22, 1899, and approved by action of the board of the directors on the same date, providing for the payment of an 'Honorarium' to the president consisting of a percentage of the net earnings of the company, the executive committee hereby authorizes the payment to the president of 5% of the net earnings of the company as determined for the six months ending December 31st, 1899."    On the margin of that resolution in the minutes the words "additional compensation to president" were written in red ink.    On January 19th, 1900, the plaintiff was paid $19,270, being 5% of the net earnings for the six months ending December 31st, 1899.    On December 26th, 1901, the executive committee adopted the following: "*Resolved*, that pursuant to the provisions of the resolution of the executive committee, passed June 22nd, 1899, and approved by action of the board of directors on the same date, providing for the payment of an 'Honorarium' to the president consisting of a percentage of the net earnings of the company, the executive committee hereby authorizes the payment of 5% on the net earnings of the company, as determined

since such payment was last made." The words "Honorarium to President" were written in red ink in the margin of the minutes of that resolution. On the 31st of December, 1901, the plaintiff was paid $56,731.30, being 5% of the net profits for the years 1900 and 1901. The resolutions of the executive committee of January 18th, 1900, and December 26th, 1901, were approved and adopted by the board of directors, and the acts of the directors and the executive committee, as stated in the minutes of their several meetings, were formally ratified and confirmed at a meeting of stockholders on March 13th, 1902. There was evidence that the plaintiff did not participate in the adoption of said resolutions.

Whilst the resolutions may be some evidence of a contract they do not of themselves establish one. If, therefore, the ruling of the Appellate Division that the executive committee could only act by formal resolution be right, the plaintiff failed to make a case for the jury. The by-laws provided: "The compensation of all officers shall be fixed by the board or by the executive committee." It may be open to some doubt whether that authorized a fixation of compensation on a percentage basis. It is unnecessary to resolve that doubt, if it exists, because the resolution of the board of directors authorizing the executive committee to award the president a participation in net profits as compensation for services in addition to regular salary was ratified by the stockholders, as were also the two payments of 5% of the net profits. It is a reasonable, or at least a permissible, construction of that resolution that the executive committee were authorized to provide by contract for the payment of a definite percentage of profits as additional compensation for future services, not that they were authorized in their discretion to make gifts from time to time for past services performed for a fixed salary. The agreement could continue, however, only "during the pleasure of the board." That is, it could not be made for a definite

time, but the employment under it could be terminated at any time by the board. Was it necessary for the plaintiff to prove a formal resolution of the executive committee fixing the amount of the extra compensation ?

It may be assumed that the committee were required to act as a body and that they could not delegate their power to one of their number. But that is far from saying that they could only act by formal votes or that their action could only be established by a written resolution. Whatever doubt may once have existed on the point it is now settled beyond controversy that a corporation may be bound by the acts of its duly authorized agents in the same way that a natural person may be bound, and that a formal resolution is not necessary to establish an act which can only be performed by a board or committee acting as a body. (*Danforth* v. *Schoharie & D. Turnpike Road,* 12 Johns. 227; *Dunn* v. *Rector, etc., of St. Andrew's Church,* 14 Johns. 118; *Bank of Columbia* v. *Patterson's Administrator,* 7 Cranch, 299; *Bank of the United States* v. *Dandridge,* 12 Wheat. 64; *Corinne Mill, Canal & Stock Co.* v. *Toponce,* 152 U. S. 405; *Curtis* v. *Leavitt,* 15 N. Y. 1, 48; *Hooker* v. *Eagle Bank of Rochester,* 30 N. Y. 83; *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.,* 152 N. Y. 251; *Hall* v. *Herter Bros.,* 90 Hun, 280; affd. on opinion below, 157 N. Y. 694; *Bagley* v. *Carthage, W. & S. H. R. R. Co.,* 165 N. Y. 179; *Gaul* v. *Kiel & Arthe Co.,* 199 N. Y. 472, 476.) The foregoing cases show that a distinction cannot be made because of the size or character of the defendant.

The question then is whether there was any evidence from which a jury could have found that the executive committee as a body agreed to pay the plaintiff a commission of 5% on the net profits of the defendant's business as compensation for future services in addition to his regular salary. Here the point is raised that oral evidence was not competent to contradict, vary or add to the resolutions, whether they be considered as constitut-

ing the contract or merely as a written memorial adopted by the parties. The answer to that is that the resolutions of June 22d, 1899, do not purport to express the terms of any contract or to be a memorial adopted by the parties of any transaction between the plaintiff and the executive committee. Upon the view most favorable to the plaintiff, they merely authorized the executive committee to make a contract, and there is no analogy between them and a resolution of the trustees of a town granting a franchise such as was involved in *Trustees of Southampton* v. *Jessup* (173 N. Y. 84), relied on by the respondent. The subsequent resolutions were adopted either in performance of the contract, if one was made, or, upon the defendant's theory, merely to carry out an indefinite understanding not amounting to a binding contract, pursuant to which the board was to be at liberty to make extra payments or not as it might see fit. The acts of the parties subsequent to the time when the contract is claimed to have been made are important only as bearing on the question of fact whether a definite contract was made. I shall not discuss them further than to observe that they lack the essential elements of an estoppel and do not establish a practical construction which requires a holding as matter of law that no definite contract was made.

The plaintiff pleaded that the agreement was partly oral and partly written and in the bill of particulars said that the written part was contained in the resolutions of June 22d, 1899. In truth those resolutions formed no part of the contract except in the sense that they constituted the authority to make it. That inaccuracy of statement could not have harmed the defendant and may be disregarded. What then is the evidence apart from said resolutions relied upon by the plaintiff to take the case to the jury?

Of course, now I state the view most favorable to the plaintiff. Mr. McCurdy, the president of the Mutual Life

Insurance Company, which owned a controlling interest in
the defendant trust company, proposed, as an inducement
to the plaintiff to remain in defendant's employ, that it
pay him "five per cent," and upon the plaintiff's signify-
ing that that would be satisfactory said "that is what we
have decided to do." Thereupon at a meeting of the execu-
tive committee on June 22d, 1899, McCurdy stated the
offer which he had made and that it was satisfactory to
the plaintiff and produced a proposed resolution like the
one adopted except that it provided for the payment of a
5% participation. For a stated reason not now material
the 5% clause was stricken out and with that change the
resolution was adopted as proposed. The verbal offer did
not state upon what the 5% was to be computed, but the
resolution shows what was in the minds of the parties.
The executive committee did not by formal vote agree to
pay the plaintiff as extra compensation 5% of the net
profits, but an agreement may be inferred from tacit
approval. A jury could have found from the adoption of
the resolution asking for authority and from their silent
acquiescence that the executive committee approved of the
proposal to pay the plaintiff 5% of the net profits to
induce him to remain in the defendants' employ, and that
upon the approval of the resolution by the board of direct-
ors, the parties understood that the plaintiff was to remain
upon the terms proposed. A meeting of the minds may be
inferred from acts as well as words, and we are of the
opinion that a jury could have found from the whole
transaction that the minds of the parties, the plaintiff
and the executive committee, met upon the proposition
to pay the plaintiff for future services in addition to his
regular salary 5% of the net profits of the business and
that on that understanding the plaintiff continued in the
service of the defendant. If an officer or employee of a
corporation is called before its board of directors or a duly
authorized committee and informed by one of their num-
ber that they have decided to make a stated increase in

his salary to induce him to continue in the service of the corporation and he assents to the proposition and acts upon it, it is not essential that the agreement be reduced to writing or embodied in a formal resolution.

The acts of the parties subsequent to June 22d, 1899, are mainly important as bearing on the weight of the evidence, with which we have nothing to do. The appellant asks us to decree final judgment, but we cannot review the order of the trial court setting aside the verdict as against the weight of evidence. It does not appear that the Appellate Division have considered that phase of the case. It should, therefore, be remitted to that court to consider it on the facts.

The judgment should be reversed and case remitted to the Appellate Division, with costs to abide the event.

CHASE, J. (dissenting). The plaintiff was president of the United States Mortgage and Trust Company from 1894 to March 30, 1905. He was also chairman of the board of directors and of the executive committee. He was paid a salary in 1894 of $10,000 and it was increased from time to time until commencing with January 1, 1903, it was fixed at $30,000 a year. This action is brought to recover in addition to his regular salary an additional amount of salary equal to 5% of the net profits of the trust company from January 1, 1902, to March 30, 1905.

The executive committee of the defendant had power and authority to fix the compensation or salary of the officers thereof. Individual members of the committee had no authority as such and the assent of a majority of the committee as individuals and independently does not amount to an assent or an affirmative action on the part of the executive committee. The best evidence of the action of the executive committee is the resolution of such committee entered upon its minutes, but I admit that if the committee acted as such without recording its action in its minutes the fact that its action is not

shown in writing by a formal resolution, although it would be unusual and open to controversy, would not prevent its action being binding and enforceable.

Where minutes of a committee are kept and resolutions are placed upon the minutes relating to the matter under discussion or in controversy the resolutions will be presumed to represent its action and any different, other or modified action would have to be shown not only clearly but also as taken independently or in explanation of an ambiguous statement of the action of the committee as shown by the formal written resolutions.

Ordinarily evidence to show that the resolutions of a committee or board do not express the true action of such committee or board would be as dangerous as evidence to prove that a contract does not express the true agreement between the parties.    Action on the part of the committee independent of the resolutions like an agreement between parties independent of a written contract could of course be shown and would be binding notwithstanding the writing.    The resolutions of the executive committee in this case do not sustain the plaintiff's claim.

The plaintiff asserts that in June, 1899, the defendant promised him an additional amount of salary based upon a percentage of the net profits of the business and that the contract was partly oral and partly written.    The record shows that plaintiff desired to obtain a thousand shares of the stock of the trust company that he might have a greater interest in the profits of the corporation. He had a conversation with one of the directors who was a member of the executive committee in regard to his wishes in that behalf and subsequently with another member of the board of directors and executive committee, in which last conversation the member of the executive committee proposed to him that in lieu of his purchase of one thousand shares of the stock of the company he be given a commission on the net proceeds of the business. Prior to that time the salary of the plaintiff had been

increased by resolution from $15,000 to $25,000 a year and he had been given an additional sum as an honorarium. The resolution is dated March 8, 1899, and is as follows: " *Resolved,* that the salary of the president be increased to twenty-five thousand dollars ($25,000) per annum to take effect as of March 1, 1899, and *resolved,* that in view of the extrordinary extra services performed by the president in behalf of this company in relation to the Royal Baking Powder Company and matters in relation to an enterprise in Washington, D. C., partially completed and now pending, an honorarium of $10,000 be voted to him as a slight recognition of work well and faithfully performed."

Following the conversation with said member of the executive committee (McCurdy) and on the same day a meeting of the executive committee was held and there was some conversation before the committee in which Mr. McCurdy stated, as testified to by the plaintiff, " That he had had this conversation with me (plaintiff) that I wanted the stock; that he couldn't give it to me and that instead of that he would recommend the treatment of the matter under the English system and give Mr. Young five per cent." He produced two resolutions which he had prepared, and after some discussion one of such resolutions was modified and passed as follows: " *Resolved,* that the executive committee recommend to the board that they be authorized to award to the president in compensation for his services and in addition to his regular salary a participation in the net profits of the company during the pleasure of the board."

On the same day a meeting of the board of directors was held and at such meeting of the board of directors a resolution was passed as follows: " The recommendation of the executive committee at their meeting held this day regarding the award to the president for additional compensation for his services over and above his regular salary was approved and adopted." These meetings were held on June 22, 1899.

On the 18th day of January, 1900, the executive committee passed a further resolution as follows: " *Resolved*, that pursuant to the provisions of the resolution of the executive committee passed June 22, 1899, and approved by action of the board of directors on the same day providing for the payment of an ' honorarium ' to the president consisting of a percentage of the net earnings of the company the executive committee hereby authorizes the payment to the president of 5% of the net earnings of the company as determined for the six months ending December 31, 1899."

The words "of an honorarium" and the word "consisting" were written into the resolution subsequent to the same being offered.   Pursuant to that resolution on January 19, the defendant paid to the plaintiff $19,270.

At a meeting of the stockholders held March 8, 1900, a resolution was passed as follows: " *Resolved*, that the acts of the directors of this company and of their executive committee as reported and stated in their minutes of meetings held since the last annual meeting of its stockholders March 9, 1899, be and they are hereby ratified and confirmed."

On December 26, 1901, another resolution was passed by the executive committee as follows: " *Resolved*, that pursuant to the provisions of the resolution of the executive committee passed June 22, 1899, and approved by action of the board of directors on the same day providing for the payment of an honorarium to the president consisting of the percentage of the net earnings of the company the executive committee hereby authorizes the payment of 5% on the net earnings of the company as determined since such payment was last made."

Pursuant to that resolution there was paid to the plaintiff on December 31, 1901, $56,721.30.   Nothing further was done by the parties relating to the matter of the payment to the plaintiff of a percentage of the net profits until the plaintiff's demand for the same at the time of

or after he ceased to be president of the company, and this action is brought, as stated, for $127,014.67, being 5% of the net profits of the trust company for three years and three months from January 1st, 1902. The only question in this case is whether, upon the facts as stated, the action can be sustained.

It is not claimed that the resolutions quoted establish a contract by which the plaintiff is entitled to recover against the defendant. Upon the resolutions alone the plaintiff failed to establish a cause of action. When the resolutions of June 22, 1899, were passed they clearly had reference to future action of the executive committee. They were not at least in form in ratification of a contract already agreed upon by the plaintiff and an individual member of the committee or otherwise. When it was said in the presence of the executive committee by Mr. McCurdy, one of its members, that they had decided to make a stated increase in the plaintiff's salary to induce him to continue in the service of the corporation, the action taken by the committee was expressed by the resolution which has been quoted, and when a payment was directed to the plaintiff it was so directed as an honorarium, the same as the payment of $10,000 made pursuant to the resolution of March 8, 1899. There is, therefore, it seems to me, no evidence whatever to warrant a jury in finding that the defendant through its executive committee entered into a contract binding upon the defendant to pay the plaintiff 5% of its net profits until such time as the executive committee saw fit to put an end to such an agreement. If, as appears, it was the intention of the committee to obtain authority to add to the plaintiff's salary from time to time an amount based upon a percentage of its net profits it may be assumed that it accomplished its purpose, but they did not subsequently act upon it except in the payment of a percentage of the profits for six months, and then again for one year, and in each case it deliberately confined the pay-

ment to an honorarium, and thereby, as it seems to me, intentionally refrained from ratifying a past contract with an individual member of the committee or of making a new contract binding upon the defendant.

After all the resolutions quoted were passed, and on or about January 1, 1903, the plaintiff's salary was by resolution increased from $25,000 to $30,000 a year, and no reference was made therein to any further or additional salary. The large item constituting the alleged additional salary of the plaintiff was never at any time entered in the defendant's books, nor included in its reports, even those made in its behalf by the plaintiff. Each payment of additional salary was an honorarium and not a recognition of an obligation.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., COLLIN, HOGAN and CARDOZO, JJ., concur with MILLER, J.; CHASE, J., reads dissenting opinion, and SEABURY, J., concurs.

Judgment reversed, etc.