George W. Young, Respondent, v. United States Mort-gage and Trust Company, Appellant.

First Department, November 9, 1917.

**Appeal — Appellate Division bound by decision of Court of Appeals on prior appeal — when judgment should be affirmed.**

Where the Court of Appeals has determined that on the evidence a jury was entitled to find that the defendant, a corporation, had entered into a binding agreement to pay the plaintiff a percentage of profits earned in order to induce him to retain the office of president and on a new trial the jury has again found in favor of the plaintiff, the Appellate Division should affirm the second judgment.

Scott, J., dissented, with opinion.

Appeal by the defendant, United States Mortgage and Trust Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of January, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 11th day of January, 1917, denying defendant's motion for a new trial made upon the minutes.

*John M. Bowers,* for the appellant.

*John C. Tomlinson,* for the respondent.

Clarke, P. J.:

When this case was on appeal to the Court of Appeals (214 N. Y. 279) it was from a judgment of this court entered upon an order which modified an order of the court at Trial Term, setting aside a verdict in favor of the plaintiff and granting a new trial by directing a dismissal of the complaint. Judge Miller, writing for the majority of the court, said: " A jury could have found from the adoption of the resolution asking for authority and from their silent acquiescence that the executive committee approved of the proposal to pay the plaintiff 5% of the net profits to induce him to remain in the defendants' employ, and that upon the approval of the resolution by the board of directors, the parties understood that the plaintiff was to remain upon the terms proposed. A meeting of the minds may be inferred from acts as well as words, and we are of the opinion that a jury could have found from the whole transaction that the minds of the parties, the plaintiff and the executive committee, met upon the proposition to pay the plaintiff for future services in addition to his regular salary 5% of the net profits of the business and that on that understanding the plaintiff continued in the service of the defendant. If an officer or employee of a corporation is called before its board of directors or a duly authorized committee and informed by one of their number that they have decided to make a stated increase in his salary to induce him to continue in the service of the corporation and he assents to the proposition and acts upon it, it is not essential that the agreement be reduced to writing

or embodied in a formal resolution." And the judgment was reversed. Judge Chase, with whom Judge Seabury concurred, dissented and after reviewing the evidence stated: " There is, therefore, it seems to me, no evidence whatever to warrant a jury in finding that the defendant through its executive committee entered into a contract binding upon the defendant to pay the plaintiff 5% of its net profits until such time as the executive committee saw fit to put an end to such an agreement. If, as appears, it was the intention of the committee to obtain authority to add to the plaintiff's salary from time to time an amount based upon a percentage of its net profits it may be assumed that it accomplished its purpose, but they did not subsequently act upon it except in the payment of a percentage of the profits for six months, and then again for one year, and in each case it deliberately confined the payment to an honorarium, and thereby, as it seems to me, intentionally refrained from ratifying a past contract with an individual member of the committee or of making a new contract binding upon the defendant."

In the face of this strong dissent by two members of the court taken in connection with the language of the prevailing opinion it is evident that the Court of Appeals had clearly before it the precise fundamental question which is the basis of the plaintiff's cause of action, and that is whether upon the facts a jury would be authorized to find that a continuing contract had been entered into between the plaintiff and the trust company until such time as the executive committee saw fit to put an end to such agreement. It seems to me, in view of the deliberate determination of the Court of Appeals, this court is not warranted, a jury upon a new trial having again found in favor of the plaintiff, in reversing the judgment entered thereon and dismissing the complaint. As I understand it the complaint can only be dismissed when there is no evidence in support thereof. Upon the former appeal two of the judges of the Court of Appeals said that there was no evidence whatever to warrant the jury in finding that the contract had been made, but five judges of the court differed with them and said that a jury could have found from the whole transaction that the minds of the parties, the plaintiff and the executive committee, met upon the

proposition to pay the plaintiff for future services in addition to his regular salary five per cent of the net profits of the business and that on that understanding the plaintiff continued in the service of the defendant.

In view of the decision by the Court of Appeals I am unable to concur in the reversal of this judgment and the dismissal of the complaint. I, therefore, vote to affirm the judgment appealed from, with costs and disbursements to the respondent.

SMITH and DAVIS, JJ., concurred; SCOTT, J., dissented.

SCOTT, J. (dissenting):

The plaintiff was president of the defendant corporation from 1894 until March 30, 1905. He received a large salary, which was increased from time to time until the date of his resignation. He now sues for a large sum of money, which he claims to be due to him as a bonus or extra compensation from January 1, 1902, to March 30, 1905, under a contract made with defendant on June 22, 1899. This contract was, as plaintiff claims in his complaint, partly in writing and partly oral, the written part consisting of a resolution adopted by the executive committee of defendant's board of directors, in the following terms:

" RESOLUTION OF EXECUTIVE COMMITTEE OF BOARD OF DIRECTORS:

" *Resolved,* That the Executive Committee recommend to the Board that they be authorized to award to the President in compensation for his services, and in addition to his regular salary, a participation in the net profits of the Company during the pleasure of the Board."

This recommendation was subsequently approved and adopted by the board of directors, and ratified by the stockholders. As to so much of the alleged contract as was oral, the bill of particulars states as follows: " *Second.* There is no allegation in the amended complaint of any person or persons, who acted on behalf of the defendant in making the contract, as stated in the demand for the Bill of Particulars. That the contract alleged in the complaint was made by the duly constituted Board of Directors and its Committees in office at the time of the making of said contract."

This is the third time that the case has been before this court. It was first tried in April, 1911, resulting in a verdict for the plaintiff. This verdict was set aside by the trial justice as against the weight of the evidence and a new trial ordered. The plaintiff appealed to this court, the parties stipulating that if, in the opinion of this court the trial court should have dismissed the complaint or directed a verdict for the defendant, an order to that effect should be made. Acting under this stipulation this court not only affirmed the order appealed from, but directed a judgment on the merits in favor of the defendant, holding in effect that upon the case made by plaintiff's proofs he was not entitled, as matter of law, to recover. (156 App. Div. 515.) This decision, was reversed by the Court of Appeals (214 N. Y. 279), that court holding that the resolution of the executive committee was not the exclusive evidence of the agreement with the plaintiff, but that the agreement might be shown by evidence of an oral proposal to the committee by one of its members, and the " tacit approval" of the proposal by the committee. The cause was thereupon remitted to this court for a reconsideration upon the facts. This court did so reconsider it, and after such reconsideration affirmed the order of the trial court setting aside the verdict, thus in effect holding that the finding of the jury that the contract sued upon was ever made was against the weight of the evidence. (168 App. Div. 858.)

Upon the second trial the jury again found in plaintiff's favor, and a motion for a new trial was denied. At this second trial the evidence offered by plaintiff was substantially the same as that which he offered upon the first trial and which we have already held to be insufficient to sustain a verdict in his favor. · The rebutting evidence on the part of defendant now introduced for the first time renders the plaintiff's case even weaker than before, so that, unless we erred greatly in holding on the last appeal that the plaintiff had failed to make out a case on the facts, we should err even more seriously in holding, on the present record, that he has made out a case. To sustain the present judgment would, as it seems to me, convict us of inconsistency, and if the verdict is against the evidence we should not affirm it merely

because a jury has twice found in plaintiff's favor.   " ' A wrong committed, no matter how often, never makes a right.' " (*Lawrence* v. *Wilson,* 107 App. Div. 365, 369; *Meinrenken* v. *N. Y. C. & H. R. R. R. Co.,* 103 id. 319, 321; *Ridgely* v. *Taylor & Co.,* 126 id. 303; *Rice* v. *Cummings Const. Co.,* 169 id. 832.)   It is true that in certain cases when the determination rests upon a question of veracity, or the evidentiary facts are such that differing conclusions as to the ultimate fact may reasonably be drawn, the appellate courts have frequently, after repeated verdicts, surrendered their own views to that of a jury, but not when, as I conceive the case to be here, there is *no* evidence to uphold a verdict.   In such a case the verdict is wrong as matter of law, and no number of repetitions can make it right.

From this point of view it may not be irrelevant to examine with some care the contract as alleged in the complaint and the evidence given to substantiate it.   The allegation of the complaint as to the terms of the contract is contained in its 2d paragraph, and is as follows:   " II.   That on or about the 22nd day of June, 1899, in consideration of services to be rendered to the defendant by the plaintiff as its president, the defendant promised and agreed to pay to the plaintiff, in addition to a fixed salary, a sum equal to five per cent of the net profits realized by it from its business *during the time the plaintiff should continue to be and act as president,* and that said promise and agreement was partly oral and partly in writing."

The significant and disputed term of the alleged contract is that italicized to the effect that the contract was to pay five per cent of the net profits " during the time the plaintiff should continue to be and act as president," and I think that it is entirely accurate to say that neither in the resolution of the executive committee, nor in plaintiff's own version of the proceedings leading up to the adoption of that resolution is there the slightest warrant for importing that term into the contract, whatever it was, made between plaintiff and the defendant.   That term, however, is all important to plaintiff's case, because it is one of the conceded facts of the case that the executive committee never specifically approved the payment of the bonus for the period covered by this action,

so that plaintiff cannot recover unless it be established that the agreement as made on June 22, 1899, entitled him to the five per cent bonus on the profits during the continuance of his term as president, without any further action by the executive committee. As has been said, the plaintiff, by his bill of particulars, states that the contract upon which he sues consists in part of the resolution of the executive committee already quoted. This resolution asks for authority to award to the president a compensation for his services and in addition to his regular salary " a participation in the net profits of the Company *during the pleasure of the Board.*" Certainly there cannot be spelled out of this resolution an agreement to pay the president, in any event, and without further action by the executive committee, five per cent of the net profits so long as he might remain president. On the contrary, the participation is expressly made contingent upon the pleasure of the board. Indeed, the resolution, by itself, does not purport to agree to allow the president any participation at all. It is distinctly a resolution conferring power upon the executive committee to award participation, and until the committee acted upon it and made such an award, no right to participation could inure to the plaintiff. So much for the resolution itself, but by the admonition of the Court of Appeals we are called upon to examine the testimony as to the oral elements which, as plaintiff claims, went into the making of the contract.

The plaintiff's version of the proceedings at the meeting of the executive committee is not long, and (omitting questions) is as follows: " Q. Please stated what occurred at the meeting of the executive committee? On June 22, 1899? A. We went through our ordinary routine business, and after that was finished, why Mr. McCurdy pulled two resolutions, which he had, out of his pocket. They were in his own handwriting, and he said, ' Gentlemen, I want to bring up a matter affecting the compensation of the president, or affecting the president.' And I said, ' Mr. Kountze, will you take the chair,' and Mr. Kountze took the chair, but I remained in the room and heard everything that happened. He stated that Mr. Young had had an offer to leave the company; that Mr. Young, through Mr. Auerbach, had made a proposition to him to stay with the company, provided he could obtain

the right to purchase a thousand shares of stock in the company, at a price to be agreed upon; that it was impossible for him to give Mr. Young that right, because it would break the control of the Mutual Life, and that he had consulted and talked over the matter — I don't know whether he referred to the men there or not — but he consulted on the matter, and he suggested that in lieu of the stock they would treat it under the English system, and this resolution providing for giving Mr. Young five per cent, which was satisfactory to him, and that five per cent being given Mr. Young would stay with the company. That is practically what he said and what he meant. Then the resolution was offered. There wasn't very much discussion."

The plaintiff further testified that when the resolution was first offered it contained after the word " participation," the words " of five per cent in the net profits of the company," but that upon consideration it was deemed best to strike out the words " of five per cent," it being stated that it was understood between the committee and the plaintiff what the percentage was to be.

I am quite unable to find in this testimony any assertion even, much less proof, that any agreement, verbal or otherwise, was then made that plaintiff should be paid the five per cent during the term of his presidency. The oral part of the contract, upon which so much stress has been laid, amounts to nothing more than proof that the percentage, when paid, was to be five per cent and this the defendant does not question.

As has already been said, the fair and obvious construction of the contract, giving full effect to both written and oral parts, was that the executive committee sought and obtained *authority*, during the pleasure of the board, to award to the president a participation of five per cent of the net profits. The resolution itself did not so award him. It merely conferred authority. The award was to be made afterwards and plaintiff's right to participation depended not upon the authority given to the executive committee, but upon the subsequent action of that committee pursuant to the authority. And it is clear that plaintiff himself, at first, so construed his right to receive the percentage. Six months after the alleged

contract was made plaintiff desired to receive the percentage upon the earnings up to that time, but before drawing it he was careful to have a formal resolution passed by the executive committee authorizing the payment to him of five per cent upon the net earnings of the company for the six months ending December 31, 1899. Again, two years later, he caused a similar resolution to be drawn and adopted by the executive committee authorizing the payment to him of five per cent upon the net earnings for the year 1900. After that no resolution of a similar kind was adopted by the executive committee, and no claim for participation in the profits appears to have been made by plaintiff until after he had ceased to be president. From this course of action on his part the inference is obvious that he then understood, as defendant now claims, that his right to participation was dependent upon a specific award by the executive committee. It appears to me to be clear to the point of demonstration that, giving the plaintiff the utmost benefit of all the evidence in his favor, he has failed to prove that the defendant ever agreed to pay him five per cent of the net profits so long as he remained president, which is the allegation upon which his whole cause of action depends. The present verdict, therefore, like the former one, is without evidence to support it.

It was partly induced no doubt by certain evidence received under objection and exception which as I consider was inadmissible.

The plaintiff was permitted to testify as to a conversation before the meeting of the executive committee with Mr. McCurdy, one of its members. I can see no ground upon which this conversation was relevant. Mr. McCurdy, though doubtless an influential member of the committee, had no authority as an individual to bind the defendant and anything he may have said outside the committee was incompetent to create a contract. What he said before the committee and was tacitly acquiesced in by it was relevant and was proven without objection. The plaintiff was further permitted to prove in great detail the results of defendant's business tending to show a great advancement in annual profits, for a period covering some nine years before the making of the alleged contract. This was relevant to no issue in the case, and was

calculated to influence the jury and prejudice it in plaintiff's favor. The plaintiff was not suing on a *quantum meruit*, but upon a definite contract for a specific percentage. If he was entitled to recover anything, there was no question as to the amount of his recovery. The evidence as to profits was not only irrelevant, but was calculated to prejudice the defendant.

For these errors, as well as because the verdict is against the evidence, the judgment and order appealed from should be reversed, and the complaint dismissed, with costs to appellant in all courts.

Judgment and order affirmed, with costs.