### CHURCH v. HARNIT et al.

Circuit Court of Appeals, Sixth Circuit.
November 6, 1929.

No. 5182.

W. T. Kinder, of Cleveland, Ohio (Tolles, Hogsett & Ginn, of Cleveland, Ohio, Cutting, Moore & Sidley, of Chicago, Ill., and Tyler, McMahon, Smith & Wilson, of Toledo, Ohio, on the brief), for appellant.

H. W. Morgan, of Toledo, Ohio (Frederick L. Geddes and Geddes, Schmettau, Williams, Eversman & Morgan, all of Toledo, Ohio, on the brief), for appellees.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. This action was brought against George S. Harnit, the president and general manager of the Harnit & Hewitt Company, engaged in the wholesale grocery business, Henry E. Hewitt, its vice president, W. A. Hein, its secretary and treasurer, and George G. Sinclair, the head of the cigar department (said four defendants also being four of the five directors of the company), to recover certain bonuses or items of additional or "deferred" compensation paid during the years 1911 to 1924 inclusive.

The procedure adopted was this: At the end of each calendar year, when the financial condition of the company and its earnings had been ascertained, Harnit as president would prepare a schedule of bonus payments to be made, including that sum to which he felt he was entitled as well as the amount of such allowances to Hewitt, Sinclair, and Hein. A meeting of the board of directors, consisting of Harnit, Hewitt, Sinclair, Hein, and Colburn would then be called, and, Harnit not voting, the allowance of bonus to the president would be approved by the passage of a resolution reciting only that the amount suggested by Harnit for himself "be placed to the credit of the president." After such meeting Harnit would then authorize the payment of the bonus he had fixed to Hewitt, Sinclair, Hein, and others.

Article IV, section 1, of the Code of Regulations of the company, provides that the officers of the corporation shall be chosen by the board of directors "and shall be paid such compensation as may be determined by such board." At the meeting on March 7, 1911, Harnit was unanimously elected president, and his salary as president and general manager was placed at $6,000 per annum. This salary was increased to $10,000 in 1912 and remained at that figure through 1924. It is now contended that the board of directors in fixing such salary had exhausted its powers, and fully exercised its authority under the code of regulations, and that the salary so fixed included full compensation for all services to be rendered during the then ensuing year; that the resolution of the directors and the acceptance of the position by Harnit constituted a contract for all services as president and general manager, and that the board was thereafter without power or authority to award additional compensation; that such award of additional compensation was wholly without consideration, and was also void, for the reason that it was made upon the affirmative votes of Hewitt, Sinclair, and Hein, who were then influenced and controlled in their judgment by the fact that they were to receive individual bonus allowances at the bounty and by the grace of Harnit; and that, having employed Hewitt, Sinclair, and Hein at definite fixed salaries, Harnit was without power to thereafter give to them or anyone else a discretionary amount of the earnings of the corporation

which belonged exclusively to the stockholders.

The case is thus baldly said to involve the power of a board of directors of an Ohio corporation without express authority of the by-laws or the authorization of the stockholders, to vote a bonus allowance to the president and general manager for past services, rendered under contract for a fixed salary, and the power of the president to make similar bonus allowances to three of the directors, also officers and employees of the company upon fixed salaries, who, with the president, were four of the five directors of the company. If this were a full and complete statement of the situation here involved, there would seem to be little question that the issues must then be decided in favor of the plaintiff-appellant. Wheeler v. Abilene Nat. Bank Bldg. Co., 159 F. 391, 394, 16 L. R. A. (N. S.) 892, 14 Ann. Cas. 917 (C. C. A. 8); Schall v. Althaus, 208 App. Div. 103, 203 N. Y. S. 36; McNulta v. Corn Belt Bank, 164 Ill. 427, 45 N. E. 954, 56 Am. St. Rep. 203. Both the directors and officers of a corporation occupy a highly fiduciary position in relation to all stockholders. Wardell v. R. R. Co., 103 U. S. 651, 26 L. Ed. 509. Cf. U. S. v. Dunn, 268 U. S. 121, 45 S. Ct. 451, 69 L. Ed. 876; Goodin v. Canal Co., 18 Ohio St. 169, 98 Am. Dec. 95; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. The corporate property, including surplus and profits, belongs to the stockholders. Active stockholders in the capacity of directors cannot, without authority and during the existence of contracts for fixed compensation, give to themselves a larger proportion of the earnings than is accorded to inactive stockholders. Carr v. Kimball, 153 App. Div. 825, 139 N. Y. S. 253, 259, affirmed 215 N. Y. 634, 109 N. E. 1068. They cannot so limit the dividends to the inactive group to what the officers and active stockholders personally consider a reasonable return upon the investment. Godley v. Crandall & Godley Co., 212 N. Y. 121, 105 N. E. 818, L. R. A. 1915D, 632. But the above statement entirely omits from consideration that which we consider as peculiarly vital in the present case.

From the very inception of defendants' association with the company it was understood by each of them, as well as by the boards of directors from time to time, that the fixed salary should be considered as the minimum compensation for services rendered, and that each of the defendants should be entitled to receive additional allowances, more fully compensating them for their services, in the event that the affairs of the corporation prospered. Bonuses of varying amounts were paid to one or more of the defendants each year from 1901, increased in amount with the increasing success of the business, and may be said to have no more than brought the total compensation paid, salaries and bonus, to a close approximation of what was paid elsewhere for similar services in the same line of business. There is no contention on the part of the plaintiff-appellant that the defendants received more in the way of salary and bonus than the fair value of their services. The business was managed with marked efficiency. Each of the defendants applied himself with peculiar energy and ability to his particular task. Each served through the succeeding years with the understanding and expectation that he would receive additional compensation if his loyalty and industry merited, and the success of the business warranted, such allowances. The company would now be estopped to deny that such was the contract of employment. Letta v. Cincinnati Iron & Steel Co., 285 F. 707 (C. C. A. 6). Otherwise expressed, the agreement of employment was not for a fixed salary but for a minimum salary, with the maximum to be determined upon principles of quantum meruit and consistent with the success of the business.

Under the foregoing circumstances, we are of the opinion that the corporation, in whose interest and on whose behalf the plaintiff files his bill, must be held to have contracted with the defendants for the payment of reasonable additional compensation or bonus. There is nothing illegal or against public policy in such a contract. Cf. National Loan & Investment Co. v. Rockland Co., 94 F. 335 (C. C. A. 8); Metropolitan Rubber Co. v. Place, 147 F. 90 (C. C. A. 2); Tietsort v. Irwin, 9 F.(2d) 65 (C. C. A. 6); Rowland v. Demming Exploration Co., Trustees, 45 Idaho, 99, 260 P. 1032; Girard v. Case Bros. Cutlery Co., 225 Pa. 327, 74 A. 201; Putnam v. Juvenile Shoe Corp., 307 Mo. 74, 269 S. W. 593, 40 A. L. R. 1412.

The one essential requirement in such cases is that the services shall not only be valuable, but that they shall have been rendered with the understanding and intention that they were to be paid for or under such circumstances as would raise a fair presumption of such intention. Fitzgerald & Mallory Construction Co. v. Fitzgerald, 137 U. S. 98, 111, 11 S. Ct. 36, 34 L. Ed. 608; Pew v. First National Bank, 130 Mass. 391,

395; St. L., Ft. S. & W. R. R. Co. v. Tiernan, 37 Kan. 606, 621, 622, 15 P. 544. In the instant case there was an express understanding between the corporation and each of the defendants as to additional compensation which is entirely consistent with the also express contract as to a minimum compensation. The evidence of this understanding was not introduced for the purpose of varying a written contract, but rather for the purpose of defining the true terms of employment. The contracts of all, with the possible exception of that with Harnit, lay in parole, and it was permissible to show the extent to which the fixed salary was intended to compensate for services as establishing the terms of such contract. No formal action by the board was necessary. It is sufficient if there was a clear and well-defined understanding. Chabot & Richard Co. v. Chabot, 109 Me. 403, 84 A. 892; Young v. U. S. Mort. & Tr. Co., 214 N. Y. 279, 285, 108 N. E. 418; In re Super Trading Co., 22 F.(2d) 480 (C. C. A. 2). In the absence of any showing that the bonus was a pure gratuity or exceeded the true value of the services, the obligation of the corporation to pay their reasonable value is not invalidated by the fact that the parties have agreed as between themselves from time to time as to what constitutes such reasonable value.

■ It is further contended that it was beyond the power of Harnit to enter into such contracts with his subordinates and beyond the power of such subordinates as constituting a majority of the board of directors to approve the allowance of compensation to Harnit. For more than twenty years the contracts of Hewitt, Sinclair, and Hein have been handled by the chief executive, and in the absence of direct action by the board of directors. This had been with the knowledge of the board and with the implied assent of the stockholders. The employment of subordinates comes directly within the apparent scope of the authority of the president, and, when such executive has acted as if so authorized for a long period of years, this court has frequently held that there is an implied ratification, and the contracts of employment will be upheld. Cunningham v. German Ins. Bank, 101 F. 977; In re Cincinnati Iron Store Co., 167 F. 486, 488; Jenkins S. S. Co. v. Preston, 186 F. 609 (all C. C. A. 6). Cf. Jenson v. Toltec Ranch Co., 174 F. 86 (C. C. A. 8); Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366; General Cartage & Storage Co. v. Cox, 74 Ohio St. 284, 78 N. E. 371, 113 Am. St. Rep. 959.

■ As to the allowances made to Harnit by a board of directors, of whom three may be said to have been collaterally interested adversely to the corporation, in that they themselves were to receive an allowance of bonus from Harnit, this does not wholly invalidate the action of the board. As directors, these three occupied a fiduciary relation toward the minority stockholders. Their action was open to the most careful scrutiny by the court. The burden is on them and upon Harnit to show that the contract was fair, honest, and reasonable in all respects, and especially with reference to the rights of the minority. Ross v. Quinnesec Iron Mining Co., 227 F. 337 (C. C. A. 6). This burden we feel has been fully sustained by the evidence. No contention of actual fraud is made. The action was not void, but at best voidable, and the record does not disclose grounds for so avoiding it. Ransome Concrete Machinery Co. v. Moody, 282 F. 29 (C. C. A. 2).

■ But, even if the allowances made by the board of directors to Harnit were considered void, there would still remain the obligation to compensate Harnit to the amount of the reasonable value of his services under the contract as we have found it to be. For a review of the authorities and a careful consideration of this question see the dissenting opinion of Judge Jones in Briggs v. Gilbert Grocery Co., 116 Ohio St. 343, 351, 156 N. E. 494. The defendants have all produced evidence that the compensation paid was reasonable and just, and this evidence is not contradicted to such extent as to warrant an inference of fraud. Under such circumstances the defendant Harnit should not be required to refund his bonus payments and seek relief on the theory of quantum meruit. Presidio Mining Co. v. Overton, 261 F. 933 (C. C. A. 9); Chabot & Richard Co. v. Chabot, 109 Me. 403, 84 A. 892.

In the above situation it is unnecessary to consider the questions of limitations and laches so fully presented to the court by counsel. It is also unnecessary to determine whether the subsequent ratification by the stockholders, of whom the defendants constituted a majority in amount of holdings, added any quality of regularity and validity to an action otherwise questionable. Nor will the courts express an opinion upon the general wisdom of a policy, in a sense secret, which at least subjects the board to criticism by the minority. Full, free, and frank disclosure is one of the duties owing from a trustee to his cestui que trustent and to have the extent and method of future compensation fully entered upon the corporate records

is generally the better course. These questions however, it is unnecessary here to notice.

The judgment of the court below dismissing plaintiff's bill is affirmed.