George J. Beldock, J.
This action was tried before me without a jury. Plaintiff, a tenant occupying premises No. 37 Commercial Street, in the borough of Brooklyn, seeks a declaratory judgment adjudging as valid an extension of an option to purchase the said premises. The extension is in the form of a letter dated April 11, 1946, from plaintiff (tenant) to defendant (landlord) which letter was indorsed “ Read, Accepted and Approved: Newtown Creek Realty, by L. Arnaud, President, Landlord.”
Plaintiff’s proof indicates that a lease covering the premises afore-mentioned was entered into between plaintiff and defendant, which was to run for a period of 10 years, commencing January 1, 1944, and terminating on December 31, 1953; that embraced in such lease was an option given to plaintiff to purchase these premises for the sum of $200,000, which option by its terms was to expire on December 31, 1945; that from December 31, 1945, to the date of termination of the lease on December 31, 1953, plaintiff was to have the privilege of purchasing these premises at a price equivalent to that which might be offered to defendant by any bona fide purchaser.
Plaintiff contends that prior to December 31, 1945, defendant agreed that the part of the option which gave plaintiff the right to purchase the premises for $200,000 (which expired on December 31, 1945) was extended beyond the expiration date, and up to December 31, 1953, in consideration of the surrender of plaintiff’s rights as tenant under another lease of premises No. 85 Commercial Street, likewise owned by the defendant herein. It is plaintiff’s claim that such extension was embraced in the letter agreement dated April 11, 1946, and that defendant now wrongfully refuses to recognize such extension and maintains that the option to purchase for $200,000 is void.
*814 A number of defenses and counterclaims have been interposed. The first is that under the by-laws of the defendant corporation its president, Mr. Arnaud, had no power to bind the corporation without express authorization of the board of directors; that the alleged letter agreement of April 11, 1946, purporting to extend the option to purchase for $200,000 was executed by the president, Mr. Arnaud, without authority of the board of directors; and that plaintiff, prior to the execution of said letter of April 11, 1946, had been advised and knew of the limitation on the power of the defendant’s president.
Upon this issue I find that the credible evidence preponderates in favor of plaintiff and that the president of the defendant corporation, under the circumstances here present, had both apparent and actual authority to execute the letter extension on behalf of the defendant. This conclusion is supported by the testimony adduced. Arnaud was the president of the defendant corporation from 1922 to 1947, during which period he was the only person in charge of and responsible for all of the transactions and negotiations with respect to the sale or lease of land and buildings owned by the defendant corporation. During this time Mr. Arnaud was a member of the board of directors which was composed of three persons, himself, his wife and one Marquais. The board was inactive and did not hold regular monthly or annual meetings. The minutes of the meetings were usually prepared by Arnaud or a-n attorney for the corporation and were signed, perfunctorily, by the other members of the board. Arnaud signed and filed the tax returns of the corporation and generally acted as the sole and responsible person in authority of the corporation.
Where, as here, a contract is made in the name of a business corporation by its president, which is. of such a nature that the directors of the corporation could authorize or ratify it legally, there exists prima facie apparent authority to enter into such contract. “ This is the general rule as to acts of the officers of a corporation who are, in ordinary affairs, clothed with general administrative powers ’’. (Westchester Mtge. Co. v. Thomas B. Mclntire, Inc., 174 App. Div. 446, 447.)
It is contended by defendant that actual notice of the limitation of Arnaud’s power to execute the option was given to plaintiff by a letter dated November 12, 1940. That letter, in my opinion, does not have the effect so claimed. It was written by defendant in response to plaintiff’s request to reduce the rent of 85 Commercial Street and to extend the term of a lease for said preniiS'es for an additional year. Arnaud testified that he never advised plaintiff that it would be necessary to obtain *815 the consent of the board of directors for an extension of the option contained in the letter of April 11, 1946. From 1940 up to and including April, 1946, Arnaud continued to act for the corporation as its sole representative and the sole person in charge of all negotiations and transactions had between the corporation and plaintiff. From all of which it follows that plaintiff at no time had actual notice of any restriction upon the prima facie powers of Arnaud as president of Newtown.
Moreover, the evidence justifies the conclusion that Arnaud had the implied power to execute the option agreement from the specific powers granted him by defendant. I find that part of the consideration of the surrender by plaintiff of its lease to 85 Commercial Street was the promise made by Arnaud to extend the option to 37 Commercial Street, the premises involved herein. The contract of sale entered into between defendant and the purchaser of 85 Commercial Street provided, among other things, that such purchaser would be at liberty to rescind the contract if a written cancellation and termination of the lease held by plaintiff on such premises were not delivered to the purchaser on the date fixed for the closing of title. At a meeting of the defendant’s board of directors held on May 15, 1945, the entire matter of the surrender of possession and cancellation of plaintiff’s lease to 85 Commercial Street was considered. A resolution was adopted authorizing, empowering and directing its officers “ to execute and deliver such papers and documents as may be proper to effect a transfer and delivery ” of its title to the purchaser “ in accordance with the terms of the aforsaid contract of sale.” Arnaud testified that in 1945 when he was negotiating for the surrender of the lease at 85 Commercial Street he consulted with Mr. Marquais, treasurer of defendant corporation (who, save for Arnaud’s wife, was the only other member of the board of directors), and that he discussed with Mr. Marquais the details of the letter extension agreement of April 11, 1946. He further stated that an executed copy of the letter agreement was then placed in the files of defendant corporation.
Defendant, therefore, must be charged with knowledge of all the circumstances and conditions of this entire matter. It knew that the extension of the option constituted part of the consideration for the cancellation and surrender of the lease. Implicit in the board’s authorization and direction to execute all necessary and proper papers to effectuate the passing of title to No. 85 Commercial Street was the authority to extend plaintiff’s option respecting No. 37 Commercial Street. As was said in Catholic Foreign Mission Soc. of America v. Oussani (215 N. Y. *816 1, 7): “A formal resolution is not the only evidence of corporate action.- (Young v. U. S. Mortgage & Trust Co., 214 N. Y. 279, and cases there cited). Everything that was said and done, the entire setting of the occasion, [the board meeting] may help in determining the authority intended to be conferred.”
Defendant also contends by way of defense and counterclaim that the alleged extension agreement was voidable because it was not approved by two thirds of its stockholders. This contention is likewise untenable. Defendant was organized as a real estate corporation and as such does not come within the purview of the provisions of section 20 of the Stock Corporation Law, which requires the approval of two thirds of a corporation’s stockholders in order to sell its property and franchise. While defendant claims that it did not actively engage in the real estate business, it does appear that the few transactions had in the years preceding 1946 involved the sale, management or lease of parts of the parcel of real property previously purchased. Accordingly, the matter here involved was an ordinary transaction of defendant’s business. (See Keating v. Coleman, 214 App. Div. 668.)
Nor is there any merit to defendant’s contention, set up in a separate defense and counterclaim; that plaintiff has breached its covenants under the lease and because of such breaches the option is unenforcible and void. In this regard defendant has failed to sustain its burden of proof. Under, the plain language of the lease, plaintiff was required to make ordinary repairs but not repairs of a structural nature and at the expiration of the term thereof was to deliver the premises “ in as good order and condition as they were at the taking of possession, damages by the elements excepted. There is some evidence ■ that piles are broken off below the water line, that a sink hole exists on the surface hear the bulkhead, probably due to weakened piles below the surface, and that by the use of a diver and diving equipment the defect in the bulkhead and piles was ascertained. However, there is no proof as to the manner in .which nor the times when the piles were broken' or that they were broken during the-occupancy of the plaintiff. Plaintiff, on the other hand, introduced proof that it had made certain repairs during the occupancy and that the premises are now. in better condition than when plaintiff took possession.
There is a further. defense and counterclaim that plaintiff breached its covenant against assignment of the lease without defendant’s written consent. I find no merit to this defense and counterclaim and hold that defendant has failed to sustain its burden with respect thereto. President Arnaud consented *817 to such assignment. The said assignment was valid and his consent with reference thereto comes within the purview of his apparent authority as president of the defendant corporation.
Accordingly, judgment is directed in favor of plaintiff for the relief prayed for in the complaint. Defendant’s defenses and counterclaims are dismissed. Submit judgment.